# IN THE SUPREME COURT OF IOWA

No. 57 /08–0070

Filed June 6, 2008

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**DAVID JOHN ISAACSON,**

      Respondent.

---

On review of the report of the Grievance Commission.

Grievance Commission report in disciplinary proceeding recommends imposition of a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

David L. Brown and Alexander Wonio of Hansen, McClintock & Riley, Des Moines, for respondent.

**HECHT**, **Justice**.

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, David J. Isaacson, violated ethical rules by failing to deposit a client's funds in a trust account, converting the client's funds, failing to keep records of transactions with the client, and making misrepresentations to the Iowa Supreme Court Disciplinary Board, the Iowa Supreme Court Client Security Commission, and the law firm partnership of which he was a member. The grievance commission found Isaacson violated the Iowa Code of Professional Responsibility by failing to deposit a client's funds in a trust account, and failing to keep proper records of transactions pertaining to those funds, but concluded the board failed to meet its burden of proof as to the other allegations. The majority of the commission recommends the imposition of a public reprimand.[1] Upon our respectful consideration of the commission's findings of fact, conclusions of law, and recommendation of the commission, we find the respondent committed several of the charged ethical violations and suspend his license to practice law for six months.

I.    **Standard of Review.**

We review de novo the commission's findings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007). We give the commission's findings and recommendations respectful consideration, but we are not bound by them. *Id.* It is the board's burden to prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674

---

[1]One member of the commission found the board met its burden on other charges and recommended Isaacson's license be suspended for at least eighteen months.

N.W.2d 139, 142 (Iowa 2004). If we find the board has proved its allegations of attorney misconduct, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission." Iowa Ct. R. 35.10(1).

## II. Factual Findings.

Isaacson, a partner in a Des Moines law firm, represented Kelly Belz in an action to collect rent owed by Belz's tenant, Robert Young. An agreement was reached on September 30, 2003, in which Young agreed to make a series of payments to settle the case: $1500 on or before October 15, 2003; $1500 on or before November 15, 2003; and the balance of $5100 on or before December 31, 2003.

Young paid the first settlement installment by delivering to Isaacson a check in the amount of $1500. Isaacson deposited the check in his personal bank account, withdrew $1300 in cash, and delivered $684 in cash to Belz.[2]

Young delivered to Isaacson a check in the amount of $3000 on or about November 18, 2003. When Isaacson deposited this check in his personal account on that date, the account had a negative balance of $155.52. It is undisputed that Isaacson subsequently delivered to Belz the sum of $3000 in cash, but neither Isaacson nor Belz maintained records that could establish when this occurred.

The third and final installment of the settlement was paid on or about December 26, 2003, when Young delivered to Isaacson a check in the amount of $2600. Isaacson deposited the instrument in his personal account on December 30, 2003, and failed to promptly deliver the funds

---

[2]Isaacson explained in his testimony before the commission that Belz, a used car dealer, preferred to receive the settlement proceeds in cash. Isaacson withheld from the first installment the sum of $816 for services rendered to Belz in achieving the settlement.

to Belz.  Several months passed.  After being informed by a third party in late June of 2004 that Belz believed Isaacson had failed to account for the third settlement installment, Isaacson's law partner reviewed the law firm's trust account.  Finding no evidence of Belz's settlement proceeds, the partner confronted Isaacson who denied he was in possession of the proceeds and claimed Belz was mistaken.[3]

In his initial written response on June 13, 2005, to the board's inquiry, Isaacson represented that although Young was to have made all payments under the settlement with Belz by December 31, 2003, "the monies were received at a considerably later time period."  Isaacson also assured the board that he could provide "a proper accounting for the settlement [funds]."  Both of these representations made by Isaacson to the board were false.  Young made all payments required under the settlement agreement before the end of 2003, and Isaacson could not properly account for the settlement funds because he commingled them with his personal funds and failed to maintain records from which an accurate accounting could be demonstrated.

Isaacson subsequently prepared, and Belz signed, an affidavit in response to the board's inquiry.  In the affidavit, Belz asserted that Isaacson cashed the settlement checks at Belz's direction and delivered to Belz all funds to which Belz was entitled.[4]  The affidavit also alleged

---

[3]Isaacson suggests his denial was truthful because by the time the partner expressed his concern about the matter, the funds had been delivered to Belz.  Neither Isaacson nor Belz maintained records that could confirm or refute Isaacson's version of the facts.

[4]The affidavit also avers Belz "approved extensions of the times provided for payment."  We are unable to discern from the record any extensions of time granted to Young.  As neither Isaacson nor Belz kept records documenting when the payments were made by Young, we are unable to determine when the first settlement installment due October 15, 2003, was received by Isaacson.  The check representing the second installment, due on November 15, 2003, was deposited by Isaacson on November 18, 2003.  The third installment due December 31, 2003, was paid on December 26, 2003.

Belz was satisfied with Isaacson's representation in connection with the Young matter, and asserted Belz subsequently consulted Isaacson on other matters and referred relatives to Isaacson for legal services.

The board filed a complaint on April 30, 2007, alleging Isaacson committed numerous ethical violations. The board asserted Isaacson's failure to deposit the settlement funds in a trust account, and his failure to respond truthfully to the board violated DR 9–102 (preserving identity of client's funds), DR 9–103(A) (maintaining books and records sufficient to demonstrate compliance with DR 9–102), and DR 1–102(A)(1) (violating a disciplinary rule), (4) (dishonesty, fraud, deceit, or misrepresentation), (5) (conduct prejudicial to the administration of justice) and (6) (conduct adversely reflecting on fitness to practice law). In an amendment to its complaint, the board subsequently alleged Isaacson also violated DR 1–102(A)(4) and (6) by failing to deposit in the firm's office account fees paid by several other clients, and by drawing a check on the law firm's partnership account to compensate his daughter for labor and reimbursing the firm with a check on his personal account that was returned for insufficient funds.

### III. Ethical Violations.

A convincing preponderance of the evidence establishes that Isaacson violated DR 9–102(A) by failing to deposit Belz's funds in a trust account. Isaacson contends this violation should be viewed as a mere technical violation of the rule because he fully complied with his client's instructions and delivered the settlement proceeds in cash. We disagree. Belz's preference to receive his funds in cash did not vitiate Isaacson's duty under the rule to deposit the settlement checks in a trust account and properly account for them. We find implausible Isaacson's claim that he believed Belz's preference to receive the settlement funds in cash

rendered DR 9–102(A) inapplicable. A lawyer's duty under the rule to deposit a client's funds in a trust account is not constrained by a client's instruction or preference. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 648 N.W.2d 127, 134 (Iowa 2002) ("Even if a client tells her attorney to withhold funds from a trust account, the attorney's failure to deposit the funds into a trust account would result in an ethics violation.").

Although Belz confirmed by his affidavit and deposition testimony that he eventually received all of the settlement proceeds to which he was entitled, the record in this case aptly illustrates the types of perils DR 9–102 seeks to avoid. Isaacson's personal bank account balance was from time to time insufficient to cover checks drawn on the account during the relevant time periods.

The record also overwhelmingly establishes that Isaacson violated DR 9–103 by failing to maintain books and records sufficient to demonstrate compliance with DR 9–102. As he failed to deposit Belz's funds in a trust account, Isaacson necessarily violated DR 9–103.

The record establishes that on several occasions Isaacson collected fees from other clients, and deposited them in his personal account rather than the partnership's account. As a consequence of this, the firm billed some clients who had already paid Isaacson for legal services. Isaacson contends his conduct was not dishonest, deceitful, or fraudulent because the partnership agreement did not require him to share his legal fees with his partner. Although Isaacson had no contractual obligation to share his fees with his partner, we conclude this fact is not dispositive as to the board's claim he violated DR 1–102(A)(4). We find persuasive the testimony of Isaacson's partner who explained the partnership agreement required the partners to deposit all

fees collected in the partnership account to assure each partner's share of the firm's overhead would be paid before the partners' "draws" were distributed. Isaacson violated this agreement by depositing several fees in his personal account, and, as a consequence, soon fell behind in the payment of his share of the overhead. His partner repeatedly requested payment of the arrearage after the partnership was dissolved in 2004. Notably, Isaacson failed to respond to his partner's requests with reasons why he did not owe approximately $15,000 as his share of the firm's overhead. Although Isaacson claimed in his testimony before the commission that he disputed whether he owed the arrearage claimed by his partner, we find his testimony wholly unpersuasive. We conclude Isaacson violated DR 1–102(A)(4) when he deceitfully failed to deposit fees in the partnership account to avoid paying his share of the firm's overhead.

Isaacson also violated DR 1–102(1) and DR 1–102(4) when he filed his 2004 Combined Statement and Questionnaire with the Iowa Supreme Court Client Security Commission. In that questionnaire, Isaacson represented that he kept "all funds of clients for matters involving the practice of law in Iowa in separate interest bearing trust accounts." As we have noted, Isaacson did not deposit Belz's settlement funds in such an account. Isaacson violated the same rules when he misrepresented to the board that he could provide an accounting of the Belz transactions when in fact he had no records that would document when the cash transactions occurred. An attorney is prohibited from engaging in conduct involving dishonesty, fraud, misrepresentation, and deceit. In connection with this fundamental principle, we have stated that a "casual, reckless disregard for the truth" warrants discipline. *Iowa*

*Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 380 (Iowa 2002).

Finally, we find the board has failed to prove by a convincing preponderance of evidence that Isaacson violated DR 1–102(A)(4) and (6) by drawing a check on the partnership account payable to his daughter for services rendered to the firm, and by reimbursing the firm with a check drawn on his personal account. We find Isaacson's daughter did provide services to the firm for which she was compensated, and the evidence in this record does not sustain the board's claim that Isaacson's actions in this transaction were characterized by dishonesty, or that they reflect adversely on his fitness to practice law.

**IV.   Sanction.**

Isaacson contends the commission's recommendation of a public reprimand is appropriate in this case. The board urges this court to suspend Isaacson's license. "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley,* 729 N.W.2d 437, 443 (Iowa 2007). "When deciding on an appropriate sanction for an attorney's misconduct, we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker,* 712 N.W.2d 683, 685 (Iowa 2006) (internal quotations and citations omitted).

We have imposed sanctions for violations of DR 9–102 ranging from a suspension of one year to a revocation. *Compare Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk,* 553 N.W.2d 322, 325 (Iowa 1996) (lawyer's license suspended for one year for misappropriation of fees from trust account where no client funds were lost), *with Comm. on Prof'l Ethics & Conduct v. Rowe,* 225 N.W.2d 103, 104 (Iowa 1975) (revocation ordered where constellation of lawyer's violations included failure to deposit client's funds in a trust account, misappropriation, and eventual restitution). We conclude a sanction less than revocation is appropriate in this case because the board failed to prove Isaacson intended to convert the third installment of the Young settlement. Although Isaacson's failure to deposit those funds in a trust account was a clear violation of DR 9–102, and the long delay of approximately six months in the delivery of the third settlement installment evidences deplorable inattention to Belz's interests, we find the delay was substantially attributable to Belz's casual attitude about receiving the funds. The board did not controvert Isaacson's testimony suggesting that Belz exhibited a somewhat cavalier attitude about the delivery of the third installment, urged Isaacson not to make a "special trip" to effect its delivery, and represented that the delivery could be accomplished at a future date when Belz would consult Isaacson on other matters.

Isaacson's violation of DR 9–102 does not stand alone, however. Dishonesty, deceit, and misrepresentation are "abhorrent concepts to the legal profession, and can give rise to the full spectrum of sanctions, including revocation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall,* 728 N.W.2d 383, 387 (Iowa 2007). Isaacson's lack of candor in his responses to the board and the client security commission, and the

deceit he practiced in the relationship with his law partner also demand a significant suspension in this case.

This court has indicated "prior disciplinary action is properly considered as an aggravating circumstance . . . ." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001); *accord Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick*, 683 N.W.2d 554, 563 (Iowa 2004). Isaacson's license to practice was suspended for six months in 1997 for violations of DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR 5–104(A) (entering a business transaction with client without full disclosure of differing interests); DR 5–105(B) (accepting employment where exercise of independent judgment likely to be affected); and DR 5–105(C) (continuing multiple employment where exercise of independent judgment likely to be adversely affected). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315, 318 (Iowa 1997).

As we determine the appropriate sanction, "[i]t is also proper to consider . . . that [the Respondent] is an experienced lawyer. . . ." *Gallner*, 621 N.W.2d at 188. As a practicing lawyer with more than thirty years of experience as a practitioner, Isaacson clearly knew of his obligation to deposit his client's funds in a trust account, his duty to keep records of such transactions, and his responsibility to be truthful in his responses to the board, the client security commission, and his law partner.

We suspend Isaacson's license to practice law in Iowa indefinitely, with no possibility of reinstatement for a period of six months from the date of filing of this opinion. The suspension imposed applies to all

facets of the practice of law as provided by Iowa Court Rule 35.12(3), and requires notification to clients as provided in Iowa Court Rule 35.21.

Upon any application for reinstatement, Isaacson shall have the burden to show he has not practiced law during the period of suspension, and that he meets the requirements of Iowa Court Rule 35.13. Costs are taxed to Isaacson pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**

All justices concur except Wiggins and Baker, JJ., who take no part.