# IN THE SUPREME COURT OF IOWA

No. 09–0847 & 09–0848

Filed April 1, 2011

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

　　Complainant,

vs.

**DAVID L. POLSLEY,**

　　Respondent.

----------------------------------

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

　　Complainant,

vs.

**KATHRYN SUE POLSLEY,**

　　Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends suspensions of six months. **LICENSES REVOKED**.

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

David L. Polsley and Kathryn Sue Polsley, Ottawa, Kansas, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint alleging the respondents, David L. Polsley and Kathryn S. Polsley, violated the Iowa Code of Professional Responsibility for Lawyers by converting government property to their own use. The Grievance Commission of the Supreme Court of Iowa found the board had proved the allegations of the complaint and recommended we suspend the respondents' licenses to practice law indefinitely with no possibility of reinstatement for six months. We find the board proved the Polsleys' conduct violated several ethical rules requiring revocation of their licenses.

## I. Factual Background and Prior Proceedings.

The Polsleys, husband and wife, reside in Ottawa, Kansas. Kathryn graduated from the University of Kansas School of Law in 1979, and David graduated from the same law school in 1981. After practicing law in Kansas for a short time, the couple moved to Iowa, took the Iowa bar examination, and were admitted to practice in this state. David accepted a job offer from a Wisconsin corporation, and they moved there in 1987. In 1991, they returned to Kansas and practiced law together thereafter.

In December 1998, Kathryn's mother, Lois Simpson, fell ill with Creutzfeldt-Jakob's syndrome, a terminal degenerative neurological disorder. From February 4, 1999, until July 3, 2000, Mrs. Simpson was bedridden in a persistent vegetative state. The Polsleys and their children moved into Simpson's home and served as her primary caretakers during her illness.

Mrs. Simpson was the beneficiary of a trust which owned a bank account. Farm income from Mrs. Simpson's mother and Mrs. Simpson's

own social security survivor's benefits were customarily deposited into the account.[1] As her mother's trustee, Kathryn drew checks on the trust's bank account to pay the ordinary and necessary bills of the household.[2]

Mrs. Simpson died in July 2000. Although the Social Security Administration (SSA) was notified of Mrs. Simpson's death, Mrs. Simpson's social security payments continued to be deposited into the trust account.[3] During the months following her mother's death, Kathryn drew checks on the account totaling $15,150 to David for legal services rendered to the trust.[4] Kathryn also wrote checks on the account to herself in the amount of $1827.19 as reimbursement for property taxes, furnace repairs, and other expenses she incurred to keep Mrs. Simpson's real estate habitable and marketable after her death. After an employee of the depository bank and the attorney for Mrs. Simpson's estate notified the SSA of the mistaken deposits, the Polsleys promptly reimbursed the overpayments to the SSA.

**A. Criminal Prosecution.** In November 2002, a fifteen-count indictment was filed against the Polsleys in U.S. District Court for the District of Kansas. Count one of the indictment charged the Polsleys with felony fraud against the SSA, and the remaining counts charged misdemeanor offenses of aiding and abetting the conversion of a social

---

[1]The Social Security Administration directly deposited Simpson's benefits into the trust's bank account.

[2]The record indicates that, at Kathryn's direction, David occasionally prepared checks on the trust account for Kathryn's signature.

[3]The total amount of the SSA checks mistakenly deposited into the account was $10,709.74.

[4]Mrs. Simpson's estate had a value of approximately $1,000,000 at the time of her death.

security benefit payment. The Polsleys each pled guilty to one misdemeanor count in April 2003.[5]

**B. Professional Discipline.** Professional disciplinary proceedings were instituted against the Polsleys in Kansas following their criminal convictions. After a hearing before a disciplinary panel of the Kansas Board for the Discipline of Attorneys, the Polsleys were found to have violated Kansas Rule of Professional Conduct (KRPC) 8.4(b) which defined "professional misconduct" to include the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Upon consideration of the record made before the disciplinary panel, the Supreme Court of Kansas found clear and convincing evidence that the Polsleys violated KRPC 8.4(b). The court's finding was based on the Polsleys' admissions in their plea agreements that they "knowingly and willfully converted government property to [their] own use." Accepting the panel's recommendation, the court suspended Kathryn's license to practice law in Kansas for two years[6] and indefinitely suspended David's license.[7]

Upon receipt of notice of the criminal convictions in federal court, this court entered an order on April 5, 2007, temporarily suspending the Polsleys' licenses to practice law in Iowa. Subsequently, the Iowa

---

[5]They were subsequently sentenced to three months of home detention, one hundred hours of community service, and three years of probation.

[6]Kathryn's license to practice law in Kansas was reinstated on December 13, 2006.

[7]The Kansas court concluded mitigating circumstances justified a sanction of suspension rather than disbarment. *In re David L. Polsley*, 85 P.3d 693, 696–97 (Kan. 2004); *In re Kathryn S. Polsley*, 86 P.3d 531, 534–35 (Kan. 2004). The sanction imposed against David in the Kansas proceedings was more severe because he had previously been reprimanded on two occasions, including one private admonition and one public censure.

Supreme Court Attorney Disciplinary Board filed a complaint against the Polsleys asserting issue preclusion and alleging their criminal acts constituted violations of DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude), (4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), (5) (engaging in conduct prejudicial to the administration of justice), and (6) (engaging in any other conduct that adversely reflects on the fitness to practice law). Following a hearing, the grievance commission found the Polsleys had been convicted "of a misdemeanor involving moral turpitude as well as a dishonest intent." The commission concluded the Polsleys violated DR 1–102(A)(3), (4), (5), and (6) "by knowingly and willingly converting government property to their own use, in violation of federal law." As a sanction for the criminal conduct, the commission recommended the Polsleys' licenses to practice law in Iowa be suspended for an additional six months beyond the pending temporary suspensions.

## II. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. Iowa Ct. R. 35.10(1) (2008); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007). The commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008). The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

> "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we 'may

impose a lesser or greater sanction than the discipline recommended by the grievance commission.' "

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004) (citations omitted)). As neither party has appealed the commission's recommendation, our review is pursuant to Iowa Court Rule 35.10(1). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 766 (Iowa 2010).

### III.  Ethical Violations.

The board invoked issue preclusion in this case under Iowa Supreme Court Rule 35.7(3). Under this rule, relitigation of an issue is precluded if

> *a.* The issue has been resolved in a civil proceeding that resulted in a final judgment, or in a criminal proceeding that resulted in a finding of guilt, even if the Iowa Supreme Court Attorney Disciplinary Board was not a party to the prior proceeding.
> *b.* The burden of proof in the prior proceeding was greater than a mere preponderance of the evidence.
> *c.* The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Ct. R. 35.7(3). In the Kansas disciplinary proceedings, the Supreme Court of Kansas found clear and convincing evidence that the Polsleys knowingly and willfully converted government property to their own use and that their criminal conduct involved dishonesty. *In re David L. Polsley*, 85 P.3d 693, 696–97 (Kan. 2004) (*Polsley I*); *In re Kathryn S. Polsley*, 86 P.3d 531, 533–35 (Kan. 2004) (*Polsley II*). This finding has preclusive effect under rule 35.7(3). With these principles in mind, we next consider whether the board has proved violations of disciplinary rules prescribing ethical conduct for Iowa lawyers.

**A. DR 1–102(A)(3) (Illegal Conduct Involving Moral Turpitude).** The board first asserts the Polsleys engaged in illegal conduct involving moral turpitude. "Moral turpitude" in the context of attorney disciplinary proceedings means illegal conduct done with a fraudulent or dishonest intent. *Comm. on Prof'l Ethics & Conduct v. Cody*, 412 N.W.2d 637, 639 (Iowa 1987). The Polsleys were both convicted of a crime based on their admission that they knowingly and willfully converted government property to their own use. According preclusive effect to the Kansas Supreme Court's finding that the Polsleys engaged in dishonesty, we conclude the board proved by a clear preponderance of the evidence that the Polsleys violated DR 1–102(A)(3) when they converted the trust's funds.

**B. DR 1–102(A)(4) (Engaging in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation).** For the reasons stated in support of our finding that the Polsleys committed acts involving moral turpitude, we find the board also proved the Polsleys' acts of conversion were characterized by dishonesty. Accordingly, we find the board proved the Polsleys violated DR 1–102(A)(4) in this case.

**C. DR 1–102(A)(5) (Engaging in Conduct Prejudicial to the Administration of Justice).** The commission of a crime does not necessarily constitute a violation of the ethical rule prohibiting conduct prejudicial to the administration of justice. *Templeton*, 784 N.W.2d at 768. Our recent decisions have made clear that "the mere act of committing a crime does not constitute a violation of this rule because the rule does not simply prohibit the doing of an act." *Id.* Rather, an act is prejudicial to the administration of justice and sanctionable only if it violates the well-understood norms and conventions of the practice of law. *Id.* These norms include the fundamental proposition that

attorneys must not convert property of others. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll,* 721 N.W.2d 788, 791–92 (Iowa 2006). Accordingly, we conclude the board proved by a convincing preponderance of the evidence that the Polsleys violated DR 1–102(A)(5).

**D.  DR 1–102(A)(6) (Engaging in Conduct Adversely Reflecting on Fitness to Practice).**  We now turn to the question of whether the board has established the Polsleys violated our disciplinary rule prohibiting conduct reflecting adversely on the Polsleys' fitness to practice law.  In *Templeton,* we noted that "the mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law."  *Templeton,* 784 N.W.2d at 767.  Ordinarily, our determination of whether an attorney's conduct reflects adversely upon his or her fitness to practice law turns not on whether the conduct is illegal, but rather upon whether there is some rational connection between the specific conduct and the actor's fitness to practice law.  *Id.*

As we have noted, the Supreme Court of Kansas found by clear and convincing evidence that the Polsleys were "convicted of theft of government property, a crime that reflects adversely on [their] honesty and trustworthiness."  *Polsley I,* 85 P.3d at 695, 697; *see also Polsley II,* 86 P.3d at 533, 535.  The Kansas court's finding was made in civil proceedings imposing a burden of proof greater than a preponderance of the evidence.  *Polsley I,* 85 P.3d at 697; *Polsley II,* 86 P.3d at 535.  Upon our review, we conclude the principles of issue preclusion also control our determination of this issue.  *See* Iowa Ct. R. 35.7(3).  Accordingly, we conclude the Polsleys' conduct reflected adversely on their fitness to practice, and therefore violated DR 1–102(A)(6).

**IV. Sanction.**

" '[I]t is almost axiomatic that the licenses of lawyers who convert funds entrusted to them should be revoked.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson,* 687 N.W.2d 587, 590 (Iowa 2004) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin,* 679 N.W.2d 641, 644 (Iowa 2004)) (cataloguing cases in which we have revoked an attorney's license for theft of entrusted funds). When a sanction less severe than revocation has been imposed against attorneys who misappropriated a client's money or fiduciary funds, we have found the attorneys "had a colorable future claim to the funds or did not take the funds for [their] own use." *Id.* We find no factual basis in the record supporting a finding that the Polsleys had a colorable future claim to the government funds in the trust's bank account or that the funds were not taken for their own use. Accordingly, we conclude the proper sanction in this case is revocation.

**V. Conclusion.**

We conclude the board proved by a convincing preponderance of the evidence that the Polsleys violated several disciplinary rules requiring revocation of their licenses to practice law in Iowa.

**LICENSES REVOKED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who take no part.