# IN THE SUPREME COURT OF IOWA

No. 12–0632

Filed December 7, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**RONALD LEE WHEELER,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa recommends a suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Nicholas Tré Critelli III, Des Moines, for complainant.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for respondent.

**CADY, Chief Justice.**

The respondent, Ronald Lee Wheeler, pled guilty to one count of knowingly making a false statement to a financial institution on a mortgage application, a federal felony. The Iowa Supreme Court Attorney Disciplinary Board then filed a complaint against Wheeler, alleging multiple violations of the Iowa Rules of Professional Conduct. A division of the Grievance Commission of the Supreme Court of Iowa found Wheeler violated one of our rules and recommended we suspend his license with no possibility of reinstatement for six months. We are required to review the commission's report. *See* Iowa Ct. R. 35.10(1) (2009).[1] After considering the commission's report, we find that Wheeler violated the ethical rules. We also agree with the recommended sanction and suspend Wheeler's license with no possibility of reinstatement for six months.

## I. Factual Findings and Prior Proceedings.

Wheeler has been a lawyer for over forty years. He began his career at the Los Angeles County District Attorney's Office in 1970. He moved to Iowa in 1978 and worked as a prosecutor in Polk County. In 1986, he went into private practice and worked predominantly as a criminal defense attorney. In 2006, Wheeler was elected Clarke County Attorney where he served until 2010.

Wheeler was active in community service throughout his career. He served as a scoutmaster for the Boy Scouts, a board member for the Murray Development Corporation, a volunteer with the Disabled American Veterans, and an active member of Rotary International, Lions

---

[1]Recent amendments to the Iowa Court Rules are not applicable in this case because the hearing was held prior to their effective date. *See* Iowa Ct. R. 35.26 (2012).

Club, and the American Legion. He also frequently assisted neighbors. While at the Polk County Attorney's Office, Wheeler helped develop an intrafamily sexual abuse program to treat perpetrators and victims of crimes involving sexual abuse. This program is still in place today.

The federal conviction serves as the basis for this disciplinary action. It stems from Wheeler's involvement with a client named Russell Blessman. Wheeler agreed to help his client purchase a residential home. Essentially, Wheeler agreed to serve as a straw man in the purchase and financing of a home for Blessman in 2006. It is unknown why Blessman did not want to reveal his identity in purchasing the home.

Wheeler executed a loan application in June 2006 and obtained a thirty-year mortgage for $796,000 from the bank. Blessman also obtained financing for the down payment from the seller for $193,716.

The sale closed with the property in Wheeler's name. Blessman took possession of the property, paid the utilities, and made the monthly mortgage payments. After one year, Blessman intended to refinance the property and transfer it to his name.

Wheeler claimed he was not paid for his services as a straw man, but he did receive a $7400 check from Blessman during the time period, which he claimed was a payment for attorney fees and for consultation with Blessman associated with Blessman's treatment program. However, Wheeler provided no invoice for these services.[2]

The mortgage application completed by Wheeler contained numerous misstatements and omissions. It listed Wheeler's monthly

---

[2]Additionally, Blessman gave Wheeler a $2000 contribution to his campaign for county attorney.

income as approximately $30,000, while his actual monthly income was approximately $8000. It also represented that Wheeler had approximately $500,000 in checking and savings accounts, even though the actual balance of these accounts was approximately $5000. Additionally, the application declared Wheeler would use the property as his primary residence, even though he never intended to live in the house. Finally, the application did not disclose the financing obtained from the seller. Wheeler claimed he did not participate in the preparation of the mortgage application documents or review them before signing.

In July, Wheeler acted on instructions from Blessman and obtained a second mortgage on the property in the amount of $484,000. As before, Wheeler signed the necessary paperwork prepared by Blessman. The mortgage application contained the same misstatements as the June mortgage.

About one year later, Wheeler met with Blessman under the belief that the property would be transferred into Blessman's name. Instead, Blessman asked Wheeler if he would help him refinance the property based on an appraisal he obtained showing the property valued at $3 million. Believing the appraisal to be false, Wheeler refused to participate in the refinancing. He asked Blessman to immediately remove his name from the property.

About two weeks later, Blessman disappeared. He also stopped making payments on the loans. Thereafter, Wheeler spent $26,000 to improve and clean the property in an attempt to sell it but was unsuccessful. At this time, the real estate market crashed. Wheeler, unable to make the mortgage payments, ultimately filed for bankruptcy

protection. The Federal Bureau of Investigation subsequently launched an investigation into the loans.

After Wheeler pled guilty to making a false statement to a financial institution, the United States District Court for the Southern District of Iowa sentenced Wheeler to time served, placed him on supervised release for five years, ordered him to perform 200 hours of community service, and required him to pay $821,134 in restitution. In doing so, the sentencing court departed from federal sentencing guidelines. The court found that Wheeler was "a minor player in this scheme," recognized his long career, and noted there was no need to protect the public from further harm or increase the sentence to deter future conduct.

Wheeler established a payment plan with the United States government to pay his restitution. His only source of income is his social security. The government takes fifteen percent of each check in payment of the restitution. The government also prosecuted the banker and Blessman. The Board presented no evidence of their restitution orders or the amount of restitution either has made to the government.

Following Wheeler's conviction, the Board filed a complaint alleging Wheeler violated multiple provisions of Iowa Rule of Professional Conduct 32:8.4. The commission found Wheeler violated rule 32:8.4(b), which prohibits a lawyer from committing "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer." *See* Iowa R. Prof'l Conduct 32:8.4(b). It recommended that the court suspend Wheeler's license with no possibility of reinstatement for six months.

## II. Scope of Review.

We review lawyer disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 (Iowa 2009). The Board must prove disciplinary violations by a convincing preponderance

of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006). This imposes a greater burden than a preponderance-of-the-evidence standard, but lesser than proof beyond a reasonable doubt. *Id.* We respectfully consider the commission's findings and recommendations, but they do not bind us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008). Upon proof of misconduct, we may impose a greater or lesser sanction than that recommended by the commission. *Casey*, 761 N.W.2d at 55.

### III. Ethical Violations.

In its complaint, the Board invoked issue preclusion pursuant to Iowa Court Rule 35.7(3). When invoked by a party, the rule bars relitigating of an issue if:

> *a.* The issue has been resolved in a civil proceeding that resulted in a final judgment, or in a criminal proceeding that resulted in a finding of guilt, even if the Iowa Supreme Court Attorney Disciplinary Board was not a party to the prior proceeding.
>
> *b.* The burden of proof in the prior proceeding was greater than a mere preponderance of the evidence.
>
> *c.* The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Ct. R. 35.7(3). Wheeler pled guilty to knowingly making a false statement to a financial institution on a mortgage application, a class "B" felony. *See* 18 U.S.C. §§ 1014, 3559 (2006). Further, the Board gave written notice to Wheeler in its complaint that it would invoke issue preclusion under rule 35.7(3). Rule 35.7(3) prohibits Wheeler from relitigating the issue of his criminal conduct. Iowa Ct. R. 35.7(3). Accordingly, we find Wheeler knowingly misrepresented his financial status to the bank. Although Wheeler claims not to have read the

mortgage applications, this claim is contrary to his guilty plea wherein he admits that he "knowingly" made a false statement or report. *See* 18 U.S.C. § 1014.

Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). A lawyer's fitness to practice law includes "his or her moral character, suitability to act as an officer of the court, ability to maintain a professional relationship, competency in legal matters, and whether he or she can be trusted to vigorously represent clients, without overreaching." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 512 (Iowa 2011); *see also* 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 65.4, at 65–8 to 65–10 (3d ed. 2009 Supp.). One type of conduct that reflects adversely on a lawyer's fitness to practice law is conduct that diminishes "public confidence in the legal profession." *Keele*, 796 N.W.2d at 512 (citation and internal quotation marks omitted); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138 (Iowa 2009).

The commission of a crime by a lawyer does not alone establish the lawyer is not fit to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010); *see also* Iowa R. Prof'l Conduct 32:8.4(b) cmt. 2 ("[I]llegal conduct *can* reflect adversely on [the] fitness to practice law." (Emphasis added.)). Instead, " '[t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law.' " *Templeton*, 784 N.W.2d at 767 (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991)). In determining whether such a connection exists, we may consider

"the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Id.* (quoting *White*, 815 P.2d at 1265).

Here, the criminal act is connected to fitness to practice law. The actions by Wheeler were dishonest, and they victimized the bank in a substantial manner. We find Wheeler violated rule 32:8.4(b) by knowingly making a false statement on a mortgage application for the benefit of a client, which adversely reflected on his fitness as a lawyer.

The Board also contends Wheeler violated rule 32:8.4(c) by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." *See* Iowa R. Prof'l Conduct 32:8.4(c). To find a lawyer violated this rule, we must conclude that the lawyer acted with some level of scienter. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). Because Wheeler pled guilty to knowingly making a false statement to a financial institution, we find he engaged in conduct involving misrepresentation in violation of rule 32:8.4(c).

We next consider whether Wheeler's conviction constitutes a violation of rule 32:8.4(d), which prohibits conduct prejudicial to the administration of justice. *See* Iowa R. Prof'l Conduct 32:8.4(d). As with rule 32:8.4(b), "the mere act of committing a crime does not constitute a violation of this rule because the rule does not simply prohibit the doing of an act." *Templeton*, 784 N.W.2d at 768. An act is prejudicial to the administration of justice if the act impedes "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Id.* (citation and internal quotation marks omitted). Here, Wheeler's act of knowingly making a misrepresentation on a mortgage

application did not involve judicial proceedings. Accordingly, the Board failed to prove Wheeler's conduct violated rule 32:8.4(d).

### IV. Sanction.

The commission recommended we suspend Wheeler's license for six months. Although issue preclusion bars Wheeler from relitigating whether he knowingly made a false statement to a financial institution, he may " 'present evidence of mitigating facts and circumstances' " with regard to any sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 877 (Iowa 1996)).

Although we do not have standard sanctions for particular types of misconduct, we "try to achieve consistency with our prior cases." *Templeton*, 784 N.W.2d at 769. Yet, this consistency is achieved through the difficult process of carefully considering and balancing all the relevant circumstances in each case, not by lumping conduct into broad categories of sanctions. When determining the appropriate sanction for each violation of our rules, we are obligated to

> consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008). Under this approach, consistency comes by establishing a subset of cases over time that share these considerations. The categories are consequently many in number and are often shaded at the edges.

One subset within the broader category of conduct involving misappropriation of funds pertains to the conduct of a lawyer in helping

a client with the misappropriation. Yet, even within the subset, more narrow categories exist.

We normally impose a substantial suspension when a lawyer commits fraud for the benefit of a client. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 187 (Iowa 2001) (imposing a six-month suspension when an attorney filed false reports to the Social Security Administration to enable his clients to receive increased social security disability benefits); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Romeo*, 554 N.W.2d 552, 553–54 (Iowa 1996) (suspending for three years an attorney who pled guilty to a misdemeanor after assisting a client under criminal suspicion by making false receipts "to get the heat off of his client" and cover up his client's role as a "fence"); *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 454 (Iowa 1990) (imposing a six-month suspension on an attorney who backdated various documents and performed a false notarization to enable a client to obtain financial gain). Yet, we have also revoked a lawyer's license to practice law for fraud resulting in the misappropriation of funds. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 267 (Iowa 2011) (revoking a lawyer's license when the lawyer converted funds belonging to a bank for his clients' benefit and misled the bank through fraud, even though the state did not charge the lawyer with a crime and he did not receive any personal benefit from the funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Polsley*, 796 N.W.2d 881, 886 (Iowa 2011) (revoking the licenses of two attorneys who pled guilty to converting social security benefit payments); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006) (revoking the license of an attorney who misappropriated funds from a nonprofit organization); *Iowa Supreme Ct. Bd. of Prof'l*

11

*Ethics & Conduct v. Lyzenga*, 619 N.W.2d 327, 328, 333 (Iowa 2000) (revoking the license of an attorney who had fourteen convictions for theft, prostitution, trespass, forgery, and deceptive practices). *See generally Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514 (Iowa 2012) (discussing cases).

In this case, Wheeler intended to misrepresent the bank by filing false financial documents. Yet, his intent was to obtain a loan from the bank, not for the bank to suffer a loss. The misrepresentation was for the purpose of obtaining the loan, which Wheeler was contractually obligated to repay. He believed his client would eventually refinance the house and pay off the loan to the bank. He also believed the bank was protected from loss by the mortgage on the home. In this respect, his conduct resembles that of another attorney whose case we are also deciding today. *See Bieber*, 824 N.W.2d at 520. In *Bieber*, the attorney prepared false documents that induced a lender to make a loan in a greater amount than it otherwise would have made. *Id.* at 516–17. But, the attorney understood the additional loan proceeds were going to be used on the property and the bank would be secured. *Id.* at 529. Neither attorney anticipated the bank would lose funds, which in fact is what occurred in both cases. Further, when Wheeler discovered that Blessman was not going to refinance the loan, but rather try to get a larger loan, Wheeler said no, and Blessman disappeared. Wheeler's only criminal conduct was giving false information to the bank.

Of course, the conduct of Wheeler is distinguished from those cases involving misappropriation that resulted in revocation. The attorney in *Nelsen*, whose license was revoked, converted funds belonging to the bank by making misrepresentations to the bank to facilitate the conversion of funds. 807 N.W.2d at 266–68. Similarly, the

attorney in *Polsley*, whose license was revoked, knowingly converted social security funds. 796 N.W.2d at 883–84. In both cases, the attorney intended for the misappropriation of funds to occur.

Additionally, numerous mitigating factors exist to reduce the severity of the sanctions in this case. First, Wheeler has no prior record of discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 301–02 (Iowa 2010) (recognizing the absence of prior discipline as a mitigating factor). Second, Wheeler has actively participated in community service throughout his career. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) (recognizing volunteer community service as a mitigating factor). Third, Wheeler is remorseful of his actions and admitted it was his responsibility to verify the accuracy of the information on the mortgage application. *See Schmidt*, 796 N.W.2d at 44 (considering remorsefulness and taking responsibility for one's actions as mitigating factors). Fourth, Wheeler is well respected in the legal community. *Iversen*, 723 N.W.2d at 811 (noting respect in the community is a mitigating factor). Fifth, the incident appears to be an aberration. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 700 (Iowa 2008) (noting a public reprimand was appropriate for an isolated incident involving client trust account violations). Finally, Wheeler cooperated with the Board in resolving this matter, just as he did in the federal investigation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 531 (Iowa 2011) (considering the respondent's cooperation with the Board as a factor in favor of a less severe sanction).

Wheeler's act of knowingly making a false statement to a financial institution is inexcusable and cannot be undone. But, we do not believe Wheeler intended to misappropriate funds or aid Blessman in

misappropriating funds. In this respect, this case involves similar underlying conduct to the *Bieber* case and many of the same mitigating factors. Upon our review, we agree with the commission's recommended sanction of a six-month suspension here. That is the same sanction we impose in Bieber. *See Bieber,* 824 N.W.2d at 528.

## V. Disposition.

We suspend Wheeler's license to practice law in this state indefinitely with no possibility of reinstatement for a period of not less than six months. This suspension shall apply to all facets of law as provided in Iowa Court Rule 35.12(3) (2009). Prior to any reinstatement, Wheeler must establish that he has not practiced law during the suspension period, that he has conformed to the rules and procedures governing reinstatement contained in rule 35.13, and that he has complied with the notification requirements of rule 35.22. We tax the costs of this proceeding to Wheeler pursuant to rule 35.26(1).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who dissents.

#12–0632, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*

**WIGGINS, Justice (dissenting).**

I dissent for the reasons stated in my dissent in *Iowa Supreme Court Disciplinary Board v. Bieber*, 824 N.W.2d 514, 530–34 (Iowa 2012) (Wiggins, J., dissenting).