CADY, Chief Justice.
The Iowa Supreme Court Attorney Disciplinary Board charged Rodney H. Powell with multiple violations of the Iowa Rules of Professional Conduct stemming from multiple trust fund infractions. A division of the Grievance Commission of the Supreme Court of Iowa found Powell violated these rules and recommended that he receive a public reprimand. On our review of the commission’s report, we find Powell violated the rules of professional conduct. We suspend his license to practice law for a period of three months.
I. Factual Findings and Prior Proceedings.
Rodney Powell is an Iowa lawyer. He is sixty-six years old. Powell was admitted to the Iowa bar in 1973, following his graduation from law school, but did not begin practicing law in Iowa until 1988. Powell served in the Air Force until 1977 and was employed by a legal services organization in Missouri until he moved to Des Moines in 1988. He practiced with a Des Moines firm after moving to Iowa until he opened his own law firm in 1996. Powell worked mostly as a sole practitioner, but employed associates for a period of time. He was disciplined in 2007 for a variety of unethical actions involved in the collection of fees. He received a private admonition in 2005 for charging an excessive fee and a private admonition in 2010 for failing to make an accounting before withdrawing fees from his trust account.
In 2010, a bookkeeper with Powell’s law firm reported to the Board that Powell was improperly using his office trust account. A subsequent audit revealed a trust account shortage. Additional audits also revealed a shortage, and another office bookkeeper made another complaint to the Board.
In response, we temporarily suspended Powell from the practice of law on October 21, 2011, and a trustee was appointed to take control of Powell’s trust account. See Iowa Ct. R. 35.4. The trustee ultimately determined the account was short approximately $43,000. The Board filed a complaint against Powell on February 28, 2012, alleging Powell violated a variety of trust fund rules, including Iowa Rule of Professional Conduct 32:1.15 (governing the safekeeping of property, including client funds placed in a trust account), as well as Iowa Court Rules 45.1 (imposing requirements for the maintenance of client trust accounts and the deposit of funds), 45.2(2) (maintaining records, providing an accounting, and returning funds), and 45.7 (establishing rules governing advance fees).
On March 21, 2012, Powell filed a petition to lift the temporary suspension. He paid the shortage in his trust account by obtaining a loan and claimed the shortage resulted from sloppy procedures and oversight. Powell also submitted evidence that he had adopted substantial measures to avoid future trust accounting problems. On May 18, 2012, we lifted the temporary suspension order.
The complaint filed by the Board proceeded to a hearing before a division of the grievance commission. The evidence *357 largely supported the allegations of the complaint. From 2007 to 2011, Powell repeatedly deposited client funds in the form of advance fees into the operating account of the firm when the funds should have been deposited in the trust account of the firm. While some of the misdirected funds were the result of a temporary banking process that automatically deposited client funds paid through a credit card into the firm operating account, Powell was extremely slow to correct the problem. In fact, for the most part, he seemed to ignore it. Additionally, some of the mishandled fees were the result of simple inattention, as well as purposeful actions by Powell. Powell also paid himself numerous legal fees before they were earned and often transferred funds from the trust account into the operating account without notice to the client and without an accompanying accounting of the fee. These actions were frequently taken when Powell needed money for the operating account. Powell compounded his trust fund problem by failing to adequately manage the bookkeeping practices of the firm.
Powell also mishandled nonretainer-client funds. He once wrote a check from his trust account to purchase a bond on behalf of a client after he deposited the client’s funds into his operating account. Another time, he used a portion of client funds placed in his trust account for the purpose of paying a property settlement and the attorney fees of opposing counsel pursuant to a stipulated decree for dissolution of marriage to pay his own attorney fees. Powell claimed he did not know the funds were given to him by the client to pay the obligations under the decree. On occasions, Powell’s client trust account records showed credits for client funds deposited in his operating account. In short, Powell basically ignored the rules and procedures for maintaining a trust account over a prolonged period of time.
Powell recently implemented corrective measures and now operates his trust account in conformance with the required rules. He maintains confidence in his current staff and has not had problems with his trust account since his reinstatement. No client suffered harm from his actions, and no clients filed a complaint against him for his conduct. Powell is nearing retirement and has performed a significant amount of pro bono legal services for individuals and nonprofit companies over the years.
The commission found Powell violated rule 32:1.15 by failing to segregate trust funds into a separate trust account. It also found Powell violated Iowa Court Rule 45.1 by failing to deposit client funds into his trust account, violated court rule 45.2(2) by failing to maintain complete trust account records and make full ac-countings,[1] and violated court rule 45.7 by failing to notify clients of the withdrawal of advanced funds. Based largely on the seven-month interim suspension, the Board recommended that Powell receive a public reprimand for his unethical conduct.
II. Scope of Review.
We review attorney disciplinary proceedings de novo. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Casey, 761 N.W.2d 53, 55 (Iowa 2009) (per curiam). The Board must prove disciplinary violá- *358 tions by a convincing preponderance of the evidence. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Conrad, 723 N.W.2d 791, 792 (Iowa 2006). We give respectful consideration to the commission’s findings and recommendations, but are not bound by them. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Wheeler, 824 N.W.2d 505, 509 (Iowa 2012).
III. Ethical Violations.
We agree with the commission that Powell violated rule 32:1.15, and the Iowa Court Rules governing trust funds. However, the evidence failed to support a finding that Powell had no colorable claim to the funds he removed from his trust account or failed to place in his trust account. Instead, consistent with the charges brought by the Board, he repeatedly failed to comply with the rules and procedures governing trust accounts. The fighting question turns on the sanction that should result from the violations, largely in light of the temporary seven-month suspension served by Powell prior to and during the pendency of this proceeding.
IV. Sanctions.
While we strive to achieve consistency in the discipline of Iowa lawyers who violate our rules of professional conduct, we also understand that the sanction to result in each individual case must rest on its individual circumstances. See id. at 511; see also Iowa Supreme Ct. Att’y Disciplinary Bd. v. Earley, 729 N.W.2d 437, 443 (Iowa 2007). In determining the appropriate sanction, we are obligated to
“consider the nature of the violations, the attorney’s fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.”
Wheeler, 824 N.W.2d at 511 (quoting Iowa Supreme Ct. Att’y Disciplinary Bd. v. Ireland, 748 N.W.2d 498, 502 (Iowa 2008)).
Broadly, this case involves conduct by a lawyer in improperly removing client funds from a trust account and failing to deposit advance fees into the trust account. Within this broad category of conduct, we recognize that a revocation normally results when the conduct of the offending lawyer constitutes conversion or theft. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk, 553 N.W.2d 322, 325 (Iowa 1996). For example, in Iowa Supreme Court Attorney Disciplinary Board v. Reilly, 708 N.W.2d 82, 83, 85 (Iowa 2006), we revoked an attorney’s license to practice law, as opposed to imposing a suspension, for converting $99,736.75 from his client trust account, which represented client proceeds of a settlement claim on behalf of a minor child.[2] We *359 recognized a consistent pattern in our cases over the years of imposing revocation for the conversion of client funds. Id. at 84.
Yet, when the case involves client funds held as an advance fee and the conduct of the attorney involves the conversion of the funds before they were earned, we generally impose discipline in the form of a suspension. See id. (citing cases imposing a suspension for conduct involving client funds in which the attorney had a color-able future claim or did not take the funds for personal use).
While the conduct in both categories is serious, less serious sanctions are normally appropriate when the offending conduct essentially involves a violation of our rule that fees paid in advance cannot normally be taken by a lawyer before the fee is earned. Id. This conduct also often spills into companion trust fund violations governing the notice and accounting requirements that must accompany the withdrawal of trust funds. See Iowa Ct. R. 45.7. Thus, we make a distinction for purposes of sanctions between conduct involving trust fund violations and conduct in the nature of stealing.
The Board brought this case as a trust fund violation, primarily involving the taking of fees before they are earned. Normally, this conduct supports a suspension ranging from a few months to a year or beyond. See Iowa Supreme Ct. Att’y Disciplinary Bd. v. Parrish, 801 N.W.2d 580, 588-89 (Iowa 2011) (citing cases); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Isaacson, 750 N.W.2d 104, 109-10 (Iowa 2008); Iowa Supreme Ct. Att’y Disciplinary Bd. v. McCann, 712 N.W.2d 89, 97 (Iowa 2006) (citing cases). The commission believed the seven-month temporary suspension served by Powell in this case supports the imposition of a public reprimand.
Generally, prior discipline is considered to be an aggravating factor in determining the appropriate sanction. Iowa Supreme Ct. Att’y Disciplinary Bd. v. McCuskey, 814 N.W.2d 250, 258 (Iowa 2012). However, prior discipline is not an aggravating factor when it is intertwined in the current case. Id. Moreover, an interim suspension for conduct involved in a case can be considered as a mitigating factor in determining the length and adequacy of a suspension as a sanction in the case. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Conroy, 795 N.W.2d 502, 506-07 (Iowa 2011).
This case has both aggravating and mitigating factors. Powell has committed unethical conduct in the past,, but has also freely given his time and professional assistance to nonprofit organizations and low-income individuals in need of legal assistance. Additionally, no client funds were lost in this case, and Powell’s trust accounting records and procedures appear to be in good order. We have recognized these factors in mitigation of discipline in the past. Gottschalk, 553 N.W.2d at 325.-
Considering all the factors and circumstances, we conclude Powell should be suspended for a period of three months. While the interim seven-month suspension weighs heavily in this case as recognized by the commission, so do the years of utter disregard by Powell for the trust fund rules and practices. Having considered the length and extent of Powell’s unethical conduct and his prolonged indifference to *360 the ethical requirements of collecting and maintaining advance fees, the seven-month interim suspension that was imposed in this case to promptly protect the public and straighten out his accounting records is insufficient to meet the goals and purposes of discipline. Powell engaged in conduct that displayed contempt for our rules governing trust accounts and placed client funds at risk. His conduct also diminished the honor and integrity of our profession. The public understandably loses trust in the profession when lawyers fail to properly protect funds required to be held in trust. In the end, an additional period of suspension is needed to uphold public confidence in the justice system and maintain the reputation of the bar. See Wheeler, 824 N.W.2d at 511.
Y. Conclusion.
We suspend Powell’s license to practice law in this state with no possibility of reinstatement for three months from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.13(3).
Upon application for reinstatement, Powell shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.14. The costs of this proceeding are assessed against Powell pursuant to rule 35.27(1).
LICENSE SUSPENDED.'
All justices concur except WIGGINS, J., who dissents.

. In Reilly, the attorney settled a claim of a minor child for $137,500. 708 N.W.2d at 83. He received a settlement draft and deposited it in his firm’s trust account. Id. Two checks were then written on the trust account to pay the attorney's contingent fee and the law firm’s expenses in pursuing the claim. Id. The amount that remained in the trust account — $99,736.75—was to be paid to a con-servatorship established for the benefit of the minor child. Id. Instead, a few weeks later, Reilly withdrew $9000 of the funds held for the child in the trust account by writing two checks on the account. A few weeks later, he withdrew the remaining $90,736.75 by writing one check on the trust account and depositing it in his personal bank account. Id. The attorney was a gambling addict that left him in constant need of funds. Id. at 85. He had no colorable claim to the funds removed from his trust account after his fees and expenses had been paid. Approximately eight months *359 later, the attorney attempted to make reimbursement to the child by depositing the funds he had removed from the trust account into a conservatorship account managed by an investment firm. Id. at 83. However, the transaction was accomplished through a check-kiting scheme that ultimately victimized one of the banks he used to accomplish the scheme. Id. The commission recommended a three-year suspension. Id. at 82.