780 So.2d 256 (2001)
Roberto RIGAL, Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-340.
District Court of Appeal of Florida, Third District.
February 21, 2001.
Rehearing Denied April 11, 2001.
*257 G. Richard Strafer, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellee.
Before LEVY and GERSTEN, JJ., and NESBITT, Senior Judge.

OPINION ON MOTION FOR REHEARING
GERSTEN, J.
We grant appellee's motion for rehearing, withdraw the opinion dated April 5, 2000, and substitute the following:
Appellant, attorney Roberto Rigal, Jr. ("Rigal"), appeals his convictions on grand theft third degree, grand theft second degree, organized scheme to defraud, and offense against intellectual property, after he deposited law firm attorney's fees into his personal account and altered the law firm's computer records to conceal the deposits. We affirm.
The dispositive issue in this case is whether Rigal was a partner at the law firm of Levine, Bush, Schnepper and Stein (hereafter "LBSS" or "the firm") where he had worked as an attorney since 1989. If Rigal is categorized as a "partner", he cannot be convicted of theft of partnership assets. This is because at the time of the alleged offenses, Florida law provided that partners were joint owners of partnership assets; thus the essential element of taking the "property of another" could not be satisfied to sustain a conviction for theft. See § 812.014, Fla.Stat. (1993); Hinkle v. State, 355 So.2d 465 (Fla. 3d DCA 1978).
Trial evidence established that LBSS was incorporated in 1984 as a "professional association" under Chapter 621, the Florida Professional Services Corporation Act. The shareholders agreement included only the four shareholders in the corporate entity, LBSS: David Levine, Edward Busch, Cory Schnepper and Barry Stein. These sole shareholders were also referred to as "equity partners", and in addition to annual bonuses, received periodic dividends from the profits of the corporation.
Rigal was hired as an associate to the firm in January of 1989. Five years later, he received the title of "partner", and his name was placed on the firm letterhead with the names of the shareholders. However, Rigal had no partnership agreement and there was no discussion with Rigal concerning his rights and obligations as a partner. Although Rigal was not a shareholder and did not receive dividends or share in the profits of the firm, he did receive a bonus.
Periodically, Rigal attended meetings where both equity and non-equity partners discussed firm business. This included a meeting in late 1994, where the shareholders discussed bonuses to be given to other employees of the firm. For the year 1994, the shareholders distributed millions in firm profits to themselves. Rigal, however, received nothing. After Rigal repeatedly complained to the shareholders, he was given the sum of $20,000. Partners Levin and Stein testified that this sum was a bonus, similar to Rigal's bonuses in prior years.
Thereafter in 1995, Rigal settled a worker's compensation case after winning a large verdict at trial. Instead of depositing the attorney's fees from the case into the firm's trust account, he deposited approximately $50,000 of the fees into his own personal account. The files of two other clients reflected a similar pattern of activity, and that Rigal had falsified the firm's computer records to conceal his taking of the settlement monies. Upon arrest, Rigal admitted taking the money, stating he was entitled to it because the checks were in his name from his client, and that the firm was taking advantage of him.
On appeal, Rigal argues his convictions should be overturned, primarily contending *258 he was a partner of the firm and thus could not be guilty of theft of partnership assets. We disagree.
Section 620.585(1), Florida Statutes (1999), defines "partnership" as "an association of two or more persons to carry on a business for profit as co-owner." There is no evidence in the record of any agreement whereby Rigal was to be a co-owner of LBSS. To the contrary, it is undisputed that LBSS is a corporation that was formed 5 years prior to Rigal's hiring. Since Rigal did not own any shares in LBSS, he was nothing more than an employee of the firm and thus could not be a co-owner. See Corlett, Killian, Hardeman, McIntosh and Levi, P.A. v. Merritt, 478 So.2d 828 (Fla. 3d DCA 1985).
It logically follows that when Rigal took the settlement monies, he was taking the property of another. Rigal made no investment in the formation of the firm, owned no shares in the firm, there was no agreement for Rigal to share in any losses or profits of the firm, and Rigal had no control over the firm's trust account. We decline to accept Rigal's Nephelococcygia by creating a form of partnership which might exist in the clouds of his mind, but not in the reality of the law.[1]
Finding no merit in Rigal's remaining arguments on appeal, we conclude the evidence was sufficient to sustain the defendant's convictions, and affirm the jury verdict and judgment of the trial court. See Tibbs v. State, 397 So.2d 1120 (Fla.1981); Rodriguez v. State, 436 So.2d 219 (Fla. 3d DCA 1983).
Affirmed.
NOTES
[1] The term "Nephelococcygia" originated in 414 B.C. in the play "The Birds" written by Aristophanes. It is used to refer to a "town in the clouds built by the cuckoos." E. Cobham Brewer, Dictionary of Phrase and Fable 610 (Claxton, Remsen, & Haffelfinger, 9th ed. 1875).