848 So.2d 296 (2003)
THE FLORIDA BAR, Complainant,
v.
Omar Javier ARCIA, Respondent.
No. SC01-952.
Supreme Court of Florida.
May 29, 2003.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff *297 Counsel, Tallahassee, Florida; and William Mulligan, Bar Counsel, Miami, FL, for Complainant.
John A. Weiss of the Law Offices of Weiss and Etkin, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review a referee's report and recommendation regarding attorney Omar Javier Arcia's ethical breaches. We have jurisdiction. See art. V, § 15, Fla. Const.

I. FACTS

The Florida Bar filed a complaint against Arcia claiming that he violated an agreement between Arcia and the law firm that employed him. The referee granted the Bar's Motion for Partial Summary Judgment, stating that the sole issue to be determined at the final hearing was the discipline to be imposed. After the final hearing, the referee issued a report containing the following findings and recommendations.
Arcia was employed as an associate at Zarco and Pardo, P.A. (the firm) from about 1995 until he was fired on September 8, 2000. His employment agreement provided him a base salary and a potential bonus each year. Arcia was given a copy of the firm's manual, which warned that attorneys were prohibited from independently representing the firm's clients or prospective clients. The firm advised Arcia that he could represent family members and friends, but any fees were payable to the firm.
In about December 1998, Arcia formed Omar J. Arcia, P.A. (the Arcia P.A.), of which he was the sole shareholder and employee. During his employment with the firm, Arcia represented some clients for the benefit of the Arcia P.A., and not the firm, thus violating his employment agreement. Arcia solicited about ten to twenty clients or potential clients by, among other things, intercepting telephone calls directed to the firm. On several occasions, Arcia deposited fees he had obtained in representing the firm's clients or prospective clients into the Arcia P.A. bank account. Further, even though the firm's practice was for a partner to open all mail, Arcia would sometimes intercept the mail and take checks made payable to the Arcia P.A. Arcia effected the transfers to the Arcia P.A. bank accounts without the firm's consent or knowledge.
Arcia also induced some of the firm's clients to deliver payments of fees to the Arcia P.A. by claiming he was a partner of the firm, and by preparing misleading documents such as stationery and other materials suggesting a relationship between the Arcia P.A. and the firm. On many occasions, Arcia executed retainer agreements with clients in which he listed Arcia P.A. and the firm as the attorneys retained. Arcia never advised the firm of the existence of Arcia P.A. and never provided the firm with any portion of the fees he received. At least once, Arcia filed a pleading in federal court suggesting that he and a partner of the firm were representing a client when, in fact, the partner had no knowledge of the representation.
Arcia used firm resources during office hours to conduct his fraudulent activities, and admitted that he viewed the firm as a competitor of the Arcia P.A. Finally, when Arcia received fees from representing friends or family, he never advised the firm.
Arcia admitted to depriving the firm of about $62,000 in legal fees. During the 1½ to 2-year span of Arcia's misconduct, the firm paid him bonuses.
Arcia's misconduct accelerated until he was fired. One of the reasons for this *298 acceleration, besides greed, was his wife's loss of income. Arcia's wife left her job when she became pregnant.
On three different dates, the firm afforded Arcia the opportunity to admit to his conduct, but he failed to do so. In particular, on September 8, 2000, Arcia refused to admit to his improprieties until the firm confronted him with clear evidence of its knowledge. When asked why he engaged in such fraud, Arcia responded that it was the result of his greed.
The firm sued Arcia and obtained a temporary restraining order against him. The firm and Arcia later settled the case. He agreed to repay the firm $60,000. Arcia requested that the following language be included in the agreement: "Neither Zarco & Pardo, P.A. nor any of its employees, shall initiate contact or provide any further evidence to [T]he Florida Bar in connection with the Bar Complaint instituted against Omar J. Arcia for the allegations contained in the Subject Lawsuit, except as specifically required by law."
The referee concluded that Arcia's actions constituted a theft of firm funds and possibly client funds. The firm could have requested payment from these clients for the unpaid fees Arcia had deceptively collected. The referee further found that the firm had been harmed by Arcia's actions, noting that the firm lost numerous H & R Block franchisees as clients. Arcia also agreed, without the firm's knowledge, to represent a client that created a conflict of interest. The referee noted that on the eve of the final hearing, Arcia made full restitution to the firmabout two years earlier than the deadline in the settlement.
The referee recommended that Arcia be found guilty of violating Rules Regulating the Florida Bar 4-8.4(b) (providing that a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects) and 4-8.4(c) (providing that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation). The referee recommended that Arcia be suspended for three years, followed by three years' probation. The referee noted that "[if] not for the fact that [Arcia] is young and has two very young children plus some other mitigating factors, this referee's recommendation would be five year disbarment." As conditions of probation, the referee recommended: (1) supervisor reports regarding Arcia's client files, (2) passing the ethics portion of the Bar exam, (3) reports on Arcia's trust accounts by a certified public accountant, and (4) entrance into a rehabilitation contract with Florida Lawyers Assistance, Inc., for mental health counseling. Finally, the referee recommended that the Bar be awarded its costs.
The referee found in aggravation (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, (4) vulnerability of victim, noting that the firm trusted Arcia and provided him with access to its clients, and (5) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. In support of this final aggravator, the referee cited the paragraph in the settlement order that bars employees of the firm from contacting or providing evidence to the Bar. In mitigation, the referee found: (1) lack of a disciplinary history, (2) personal or emotional problems (Arcia testified that he experienced family and financial problems especially after his wife left her job), (3) timely restitution (however, the referee noted that "[t]he full consequences of his misconduct cannot be stated with specificity"), (4) character or reputation (the referee stated that "a few attorney friends" testified as to Arcia's character and reputation), *299 (5) interim rehabilitation, and (6) remorse.
The referee's choice of words in finding the rehabilitation and remorse mitigators demonstrates that the referee did not give them much weight. Regarding rehabilitation, the referee stated that Arcia "has provided little evidence to show that he has been rehabilitated from his dishonesty although he has built up a practice in the past year and has been referred cases by other attorneys who have been satisfied with his work." As to remorse, the referee stated that he "saw little if no outward appearances of remorse or emotion. However, [Arcia] testified that he was remorseful and so did his friends." Earlier in the report, the referee stated: "[Arcia] still thinks that he is very clever and `slick'. As an example, [Arcia] testified that he thought that what he did was simply `moonlighting'. After questioning, he did a backpedal and admitted it may have been more than just moonlighting."
Arcia challenges the aggravating and mitigating factors the referee found, as well as the recommended discipline.

II. ANALYSIS

Neither party contests the referee's recommended findings of fact or recommendations as to guilt for the violations of rules 4-8.4(b) and 4-8.4(c).[1] Therefore, we approve the referee's findings of fact and recommendations of guilt without further discussion.

A. Aggravators and mitigators

Arcia first challenges various aggravators and mitigators the referee found. We have held that a referee's findings of fact carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. See Florida Bar v. Summers, 728 So.2d 739, 741 (Fla.1999). This standard applies in reviewing a referee's findings of mitigation and aggravation. See, e.g., Florida Bar v. Wolis, 783 So.2d 1057, 1059 (Fla.2001); Florida Bar v. Hecker, 475 So.2d 1240, 1242 (Fla.1985). Having reviewed the record below, we conclude that the referee's findings of aggravators and mitigators are supported by the record and are not clearly erroneous. Accordingly, we approve the referee's findings.

B. Recommended discipline

Arcia next challenges the referee's recommended discipline. He argues that in other cases involving theft of firm funds we have imposed a maximum discipline of only one-year suspensions. See Florida Bar v. Ward, 599 So.2d 650 (Fla.1992); Florida Bar v. Farver, 506 So.2d 1031 (Fla.1987). He also argues that we have found theft of firm funds to be less serious than theft of client funds, thus warranting lesser discipline.
In client misappropriation cases, we have held that a presumption of disbarment exists. See Florida Bar v. Bailey, 803 So.2d 683 (Fla.2001). We also have held that "when a lawyer steals from someone other than a client, th[e] special `public trust' is not violated to the same extent as if the lawyer has stolen money from his or her client." Ward, 599 So.2d at 652. While the public trust may not be violated to the same extent, however, it is violated nonetheless. Conduct such as Arcia's (i.e., an attorney stealing from a law firm) has been held to constitute grand theft. See Rigal v. State, 780 So.2d 256 *300 (Fla. 3d DCA), review denied, 800 So.2d 615 (Fla.2001). We conclude that, for purposes of attorney discipline, theft of firm funds is serious enough to warrant disbarment under most circumstances. While theft of client funds rends the fundamental bond between a lawyer and the client, theft of firm funds breaches the trust that law firms must place in their attorneys as professionals to act as representatives of the firm.
In this case, while in proceedings before the referee the Bar sought disbarment, it has not cross-appealed the referee's recommended discipline of a three-year suspension. We therefore defer to the referee's recommendation and impose a three-year suspension to be followed by a three-year probationary period, to begin upon Arcia's reinstatement. We emphasize, however, that future cases involving theft of firm funds will carry a presumption of disbarment.
Accordingly, Omar Javier Arcia is hereby suspended from the practice of law for three years. The suspension will be effective thirty days from the filing of this opinion so that Arcia can close out his practice and protect the interests of existing clients. If Arcia notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Arcia shall accept no new business from the date this opinion is filed until the suspension is completed and Arcia is reinstated to the practice of law in Florida. If Arcia is reinstated to the Bar following his suspension, he shall immediately be placed on three years' probation with the conditions outlined in the referee's report.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Omar Javier in the amount of $4,284.90, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] Arcia did challenge the referee's finding that he established the P.A. with the intent to divert funds from the firm. Given that Arcia remained with the firm for almost two years after forming the P.A. and that within about six months of the incorporation he began diverting funds into the P.A., this finding is not clearly erroneous.