**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Lynn Jay IRWIN III, Respondent.**

No. 03–2027.

Supreme Court of Iowa.

May 12, 2004.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Brent B. Green of Duncan Green Brown Langeness & Eckley, P.C., Des Moines, for respondent.

CARTER, Justice.

This matter is before us for a review of the findings and recommendation of the Grievance Commission pursuant to Iowa Court Rule 35.10. The matter was submitted to that commission on a lengthy and detailed stipulation of the facts involving the allegations of the complaint filed against respondent, Lynn Jay Irwin III, by the Iowa Supreme Court Board of Professional Ethics and Conduct.

Included in that stipulation was a recommendation for sanction approved by the board. The general nature of the complaints against respondent involved allegations that, while employed as a salaried attorney for a Des Moines law firm, he failed to remit fees he collected to the firm, as required by the conditions of his employment. The stipulation recited that respondent and the law firm at which he is employed had a verbal agreement that he would receive a monthly salary of $4000 and additional compensation in the amount of fifty percent of all legal fees collected for his work in excess of $100,000 annually. It states that:

Although Respondent denies certain allegations of the complaint, he acknowledges that if the matter were to proceed to evidentiary hearing before the Grievance Commission, he could not successfully defend the charges.

If the complaint herein proceeded to hearing, the testimony and evidence could establish by a convincing preponderance of the evidence that the respondent, Lynn Jay Irwin III, committed the ethical violations charged in each count of the complaint.

The stipulation states that the following factual scenarios occurred, each of which is the subject of an alleged ethical violation in the board's complaint:

1. Sometime in 1998 respondent, while employed at the law firm, settled a personal injury case for Jennifer Dennis. He retained approximately $73,000 of the fee received from the client and deposited it in a trust account at the Iowa State Bank that had been opened in his own name. He did not inform the bookkeeper at the firm about this transaction and he did not list the trust account on his Combined Statement and Questionnaire filed with the Client Security and Attorney Disciplinary Commission pursuant to Iowa Supreme Court Rule 39.11.

2. Sometime in 1997 respondent, while employed at the law firm, settled a personal injury action for Patricia Brittain and ultimately received a one-third contingency fee of $16,666.67, which was deposited in his personal bank account.

3. In November 1998 respondent, while employed at the law firm, represented Scott Warner in defending a criminal charge. He received a fee of $3000, which he retained for his own use. Although the fee was not com-

pletely earned when received, it was not deposited in a client trust account.

4. In March 1999, while employed at the law firm, respondent represented Linda Hoover on an OWI charge and received a fee of $500. He deposited that fee in his personal account and did not advise the firm.

5. In February 1999 respondent, while employed at the law firm, represented John Withers on an OWI charge and received a flat fee of $750. Respondent retained this fee for his personal use without the knowledge of the firm.

6. In April 1999 respondent, while employed at the law firm, represented Bradley Moore on an OWI charge and was paid a fee of $500. He retained all of that fee for his own use without the knowledge of the firm.

7. In October 1997, while employed at the law firm, respondent represented John Stokka in a stock-foreclosure and bankruptcy-related matter. He received three checks, each in the amount of $600. One of the checks was payable to the law firm and was credited to its trust account. The other two checks were negotiated by respondent for his own use.

8. In August 1997, while employed at the law firm, respondent represented Donna Mills on a criminal charge in Woodbury County. Mills was an employee of the Watson Law Firm. She and respondent agreed that others at the law firm would not be advised concerning this transaction. Respondent received a fee from Mills in the sum of $1000 and retained the proceeds for his own use without the knowledge of the law firm.

9. Sometime in 1998 respondent, while employed at the law firm, negotiated a settlement of a personal-injury claim for Katie Helt. He received a contingent fee of $2500, which he retained for his own use without informing the firm.

10. During the time that respondent worked at the law firm, he performed legal services for the owner of an optical company to whom respondent owed money. These services were accepted in payment of respondent's personal obligation in a barter transaction carried on without the knowledge of the law firm.

With respect to each of these transactions, the stipulation recites that respondent believed that he could "moonlight" and earn extra money on his own time as long as he met his minimum obligation to the firm.

The stipulation refers to the following facts as mitigating circumstances. Respondent eventually returned the $16,666.67 fee on the Brittain matter to the law firm. Later, in response to an action brought against him by the law firm, he settled all existing claims of the firm based on the foregoing conduct. Respondent had no record of ethical violations prior to the transactions involved in the present complaint and has been active in bar activities seeking to promote the administration of justice. Several lawyers submitted affidavits to the commission attesting to respondent's reputation for truth, veracity, and general moral character. His former wife submitted a similar affidavit.

At the conclusion of the stipulation, it is recited:

> The parties recommend that the conduct of Respondent would warrant indefinite suspension of his license to practice law in the State of Iowa, with no possibility of reinstatement for at least two years.

Based on the stipulation, the Grievance Commission found that the actions stipulated to on each occasion involved a willful misappropriation of funds due his employ-

er. These acts were found to be a violation of DR 1–102(4) of the Iowa Code of Professional Responsibility for Lawyers, which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. The commission also noted in its findings respondent's violation of DR 9–102, requiring the deposit of unearned fees in a trust account, and his failure to acknowledge a secret trust account in the annual questionnaire required by Iowa Court Rule 39.11.

On the issue of appropriate discipline, the commission stated that it

considered the Stipulation to be akin to a plea agreement and as such, use of a stipulation in lieu of a hearing is arguably an important procedure for the effective and efficient administration of the Iowa attorney disciplinary process. The Commission further believe[s] that under the present body of law, the Ethics Board's agreement to enter into the Stipulation in the present matter should be accorded due consideration by the Commission. Accordingly, the Commission recommends pursuant to its acceptance of the Stipulation that Respondent's license to practice law in the State of Iowa be suspended indefinitely, with no possibility of reinstatement for at least two years.

■ Pursuant to Iowa Court Rule 35.10, we review the proceedings before the commission and the commission's recommendations de novo. This rule provides that "[u]pon such review de novo the supreme court may impose a lesser or greater sanction than the discipline recommended by the Grievance Commission." *Id.* We agree with the findings of the Grievance Commission that the stipulated facts establish by a convincing preponderance of the evidence that respondent is guilty of the disciplinary violations that it found to have occurred. He could not have reasonably believed that he could "moonlight" to the extent shown by the evidence given the terms of his employment contract with the firm. Moreover, there is evidence of an intentional concealment of his diversion of attorney fees from the firm to himself.

■ With respect to the proper discipline to be imposed, we have noted in several cases that it is almost axiomatic that the licenses of lawyers who convert funds entrusted to them should be revoked. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams,* 675 N.W.2d 530, 533 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 652 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994). We have said that this is so because dishonesty is a trait that should disqualify the dishonest person from the practice of law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 130 (Iowa 1999). This principle has been adhered to in several cases in which lawyers have been found guilty of converting funds properly due to their own law firms. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999); *Carr,* 588 N.W.2d at 130; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996); *Comm. on Prof'l Ethics & Conduct v. Piazza,* 405 N.W.2d 820, 824 (Iowa 1987). In each of these proceedings, the license of the offending lawyer was revoked. Given the very serious and pervasive nature of respondent's violations in the present case, we can see no reason why his disposition should not be the same as that which was employed in the cited cases.

We are mindful of the deference that the Grievance Commission gave to the stipulation entered into by the Iowa Supreme Court Board of Professional Ethics and Conduct. It is, as the commission noted, in the interest of the expeditious

disposition of these cases to accept the recommendations of the agency charged with prosecuting the ethical violations of lawyers. Notwithstanding this fact, we have precedent for rejecting stipulated dispositions of the type proposed in the present case. In *Committee on Professional Ethics & Conduct v. Oehler*, 350 N.W.2d 195, 199 (Iowa 1984), a number of alleged disciplinary violations were submitted to the Grievance Commission on a stipulation of facts, which included a recommendation for a two-year suspension of the license of the offending attorney. As in the present case, the Grievance Commission recommended the sanction suggested in the stipulation. Given the seriousness of the violations that had occurred, this court declined to accept that recommendation and revoked the license of the offending attorney. *Id.* We are persuaded that we should act similarly in the present case.

For all of the reasons stated in this opinion, the license of respondent, Lynn Jay Irwin III, is revoked effective with the filing of this opinion. We assess the costs to respondent as provided in Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**