# IN THE SUPREME COURT OF IOWA

No. 19–0360

Filed September 13, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**CURTIS W. DEN BESTE,**

Respondent.

_____

On review of the report of the Iowa Supreme Court Grievance Commission.

In attorney disciplinary action, grievance commission recommends suspension for multiple violations of ethical rules, including theft from employer. **LICENSE SUSPENDED.**

Tara van Brederode and Amanda K. Robinson, Des Moines, for complainant.

Curtis W. Den Beste, Cedar Rapids, pro se.

**CADY, Chief Justice.**

This case is before us on review from a report and recommendation of a division of the Iowa Supreme Court Grievance Commission concerning attorney Curtis W. Den Beste. The report found Den Beste committed ethical violations and recommended a four-month suspension of his license to practice law. We find Den Beste violated the Iowa Rules of Professional Conduct by engaging in criminal conduct involving theft from his employer. We suspend his license to practice law in Iowa indefinitely with no possibility of reinstatement for four months.

## I. Background Facts and Proceedings.

Curtis Den Beste is an Iowa attorney. He received his license to practice law in 2000. In 2007, Den Beste received an offer from Steve Howes to practice at the Howes Law Firm, P.C. (Howes) in Linn County, Iowa. The misconduct giving rise to this proceeding occurred while Den Beste worked at Howes.

Den Beste entered into a fee agreement with Howes requiring him to deposit all earned client fees into a trust account or the general law firm account. Pursuant to the agreement Den Beste was then paid fifty percent of the fees he earned, and Howes retained the remainder to cover overhead and other expenses. Beginning in 2015, Den Beste accepted cash payments from some clients and kept the proceeds for himself rather than deposit them as required by the fee agreement.

Den Beste's pattern of misconduct was discovered in March 2017. He had instructed the firm's accounting manager to "write off" a number of accounts he dishonestly deemed "uncollectable." When the manager called the clients in an attempt to collect payment, some informed her that they had already paid Den Beste directly. Steve Howes confronted him at a meeting shortly after the discovery. Den Beste admitted to the theft and

was terminated. He agreed to self-report his misconduct to the disciplinary board and to provide an accounting of the diverted funds as well as a repayment plan. The accounting revealed he retained a total of $18,200. Accounting for the fifty-percent split, and other tax and reimbursement considerations, respondent wrongfully deprived Howes of $9200. A Client Security Commission auditor investigated the issue and found no evidence to conclude Den Beste's accounting was inaccurate. He also noted respondent was cooperative and provided him with all requested information. However, he also explained Howes's record keeping did not provide a "way to verify that the amount reported by Den Beste as stolen is accurate."

## II.  Board Complaint and Commission Recommendations.

After Den Beste reported his conduct to the Iowa Supreme Court Attorney Disciplinary Board, the Board filed a complaint alleging Den Beste violated Iowa Rules of Professional Conduct 32:8.4(b) and (c). Den Beste and the Board filed a joint stipulation of facts containing a recitation of events, a discussion of the rule violations and sanctions, accompanying exhibits, and a waiver of hearing. Following a hearing, the commission found Den Beste violated rules 32:8.4(b) and (c), identifying his pattern of misconduct involving "extensive or serious misrepresentations" as an aggravating factor. It also noted Den Beste's conduct constitutes theft in violation of Iowa Code section 714.2(2), although he was not charged criminally.

The commission recognized a number of mitigating circumstances in its report. These factors include Den Beste's self-reporting of wrongdoing, his cooperation with the Board, his voluntary plan to reimburse Howes, and the absence of a prior disciplinary record. There is no indication his indiscretions caused any financial harm to his clients.

Importantly, Steve Howes submitted a letter stating he was the only person financially harmed by the theft. He gave positive remarks regarding Den Beste's professional abilities and character and asked for sanctions short of revocation. The letter also mentioned Den Beste's mentorship of young lawyers, his competency in legal matters, and his personal contributions to the firm.

In recommending a sanction, the commission observed instances in prior disciplinary cases in which an attorney's theft from a law firm involved additional serious wrongdoing. These cases typically resulted in license revocation. By contrast, cases absent of these egregious aggravating factors resulted in more lenient sanctions. Finding no aggravating factors warranting revocation in this case, the commission recommended a four-month license suspension as the appropriate sanction.

### III. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 913 (Iowa 2011). Although we give respectful consideration to the findings and recommendations by the commission, we are not bound by them. *Id.* The Board must prove the misconduct by a convincing preponderance of the evidence. *Id.*

### IV. Violations.

**A. Rule 32:8.4(b).** Rule 32:8.4(b) states that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). The parties stipulated that the factual basis for this rule violation is Den Beste's own admission that "he took approximately $9,200.00 in fees that rightly belonged to his

employer law firm for his personal use, which is conduct that constitutes theft." We have stated that "[a] lawyer who commits a theft of funds engages in conduct involving moral turpitude, dishonesty, and conduct that adversely reflects on the lawyer's fitness to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 741 (Iowa 2013). Iowa Code section 714.1(2) defines theft as the misappropriation of another's property in a manner inconsistent with the owner's right in the property or appropriation of such property for personal use. Iowa Code § 714.1(2) (2017).

Den Beste committed theft by retaining funds in a manner inconsistent with Howes's right to payment for his own benefit. *See In re Disciplinary Proceeding Against Placide*, 414 P.3d 1124, 1126, 1136 (Wash. 2018) (concluding attorney committed theft based on conduct similar to the conduct in this case under a statute similar to Iowa's theft statute). Despite his acquiescence to the fee agreement, he failed to deposit client fees into the firm's general account. His failure to do so prevented Howes from receiving its share of the funds. We find Den Beste's theft is conduct that reflects adversely on his fitness to practice law in violation of Iowa Rule of Professional Conduct 32:8.4(b).

**B. Rule 32:8.4(c) Violation.** Rule 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). The stipulation frames the bases for this rule violation as respondent's inherently dishonest act of stealing funds belonging to Howes. Additionally, it identified Den Beste's untruthful statements to the firm's accounting manager regarding the status of client payments as dishonest behavior.

Our analysis of attorney conduct violating rule 32:8.4(c) is not limited to criminal acts. We may consider any conduct "involving dishonesty, fraud, deceit, or misrepresentation." *Id.* In *Iowa Supreme Court Attorney Disciplinary Board v. Henrichsen*, this court discussed rule 32:8.4(c) in light of a similar factual scenario. 825 N.W.2d 525, 527 (Iowa 2013). *Henrichsen* involved an attorney who retained $10,000 in client fees over an extended period of time in violation of his firm's fee agreement. *Id.* Henrichsen's conduct was discovered after the firm's bookkeeper noticed an absence of payment from a particular client. *Id.* In our discussion of rule 32:8.4(c), we explained the rule "is virtually identical to its predecessor, DR 1–102(A)(4). We held on numerous occasions that a lawyer violated DR 1–102(A)(4) by depositing receivables intended for the firm into a personal bank account." *Id.* at 527–28 (citation omitted). We found no reason to interpret the current rule differently from its predecessor and concluded Henrichsen violated Iowa Rule of Professional Conduct 32:8.4(c). *Id.* at 528. We imposed a suspension for a period of three months. *Id.* at 530.

Den Beste's conduct is nearly identical to Henrichsen's. Like Henrichsen, he violated the firm's fee agreement for an extended period of time, approximately two years. In the process, he deprived the firm of a substantial amount of revenue. Den Beste also knowingly misrepresented the status of the accounts to the accounting manager in order to conceal his wrongdoing. We find respondent's theft and misleading statements constitute conduct in violation of rule 32:8.4(c).

## V. Sanction.

In *Henrichsen,* we reviewed the line of cases involving the conversion of law firm fees that resulted in revocation and those that resulted in sanctions less than revocation. *Id.* at 528–30. This review revealed that

the cases resulting in revocation largely involved substantial fee conversion often accompanied by other serious conduct such as conversion of client funds, felony convictions, or involvement in other crimes. *Id.* at 528–29; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin*, 679 N.W.2d 641, 642–44 (Iowa 2004) (revoking license of attorney who converted nearly $99,000 in fees owed to his firm); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz*, 595 N.W.2d 794, 795–96 (Iowa 1999) (revoking license of attorney who converted over $140,000 in legal fees resulting in convictions of felony offenses involving theft and deceit); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr*, 588 N.W.2d 127, 129–30 (Iowa 1999) (revoking license for conduct that involved fraud to both client and firm). On the other hand, a sanction less than revocation has been imposed when the amounts involved were relatively small and there was no prior record of discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 110 (Iowa 2008) (imposing a six-month suspension for attorney who converted fees and failed to respond to partnership's request for missing funds, failed to deposit client funds in a trust account, failed to deliver funds to a client, and failed to maintain proper records); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Huisinga*, 642 N.W.2d 283, 285, 288 (Iowa 2002) (imposing public reprimand involving fees of $3180); *Comm. on Prof'l Ethics & Conduct v. McClintock*, 442 N.W.2d 607, 608 (Iowa 1989) (imposing a public reprimand of attorney who retained nearly $7000 in fees).

When we match the conduct of Den Beste in this case with our prior cases, it clearly most resembles the actions of the attorney in *Henrichsen*, in which we imposed a three-month suspension. While Den Beste originally tried to hide his conduct by instructing the accounting manager to designate the affected client accounts as uncollectible, this aggravated

conduct was not as severe as that in *Issacson.* In *Isaacson,* the attorney stone-walled the partners' requests for missing funds and also engaged in a variety of other unethical conduct, resulting in a six-month suspension. 750 N.W.2d at 108, 110. As a result, we conclude the sanctions in this case should be less than six months but more than three months.

Yet, the Board asks us to step back and reconsider the trajectory of our precedents. In particular, the Board directs our attention to *Florida Bar v. Arcia,* 848 So. 2d 296 (Fla. 2003) (per curiam). In *Arcia,* the Florida Supreme Court considered the distinction in its disciplinary caselaw between theft of funds of clients and theft of funds from someone other than a client. *Id.* at 299–300. In two prior cases, the Florida Supreme Court imposed a one-year suspension in cases involving theft of law firm funds by a lawyer. *Id.* at 299 (first citing *Fla. Bar v. Ward,* 599 So. 2d 650 (Fla. 1992); then citing *Fla. Bar v. Farver,* 506 So. 2d 1031 (Fla. 1987)). The *Arcia* court noted that "[w]hile theft of client funds rends the fundamental bond between a lawyer and the client, theft of firm funds breaches the trust that law firms must place in their attorneys as professionals to act as representatives of the firm." *Id.* at 300.

The *Arcia* court observed, however, that Florida disciplinary authorities board did not cross-appeal the sanction of a referee and that, as a result, it would defer to the referee's finding of a three-year suspension. *Id.* The *Arcia* court made clear, however, that "future cases involving theft of firm funds will carry a presumption of disbarment." *Id.*

It is certainly true that, in many cases, fee disputes between a lawyer and his or her current or former law firm might simply be contract disputes and nothing more. For example, a lawyer with a good-faith claim to fees should not be sanctioned merely for exercising or asserting such a claim. But not all fee disputes between a lawyer and a law firm are garden variety

contract disputes. Some involve outright and undisputed theft. In such cases, the imposition of discipline is clearly appropriate.

The question then arises whether theft from a client is more serious than theft from a law firm or other third party. In our prior cases, the difference has often been dramatic. Theft of any amount by a lawyer from a client ordinarily results in revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 170–71 (Iowa 2019); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500–01 (Iowa 2017). But theft of funds from a law firm can result in much lesser sanctions. *Henrichsen*, 825 N.W.2d at 529–30.

There are, perhaps, some reasons for the distinction between client theft and law firm theft. For instance, many clients have little power against a lawyer in whom the client places trust. A lawyer who steals from a client is preying on those often in an extremely vulnerable position who have placed trust in the lawyer and advanced funds to the lawyer to protect their interests. The relationship between a law firm and a lawyer ordinarily will have less of a power imbalance. The firm is in a better position, perhaps, than a client to monitor the proper handling of fees.

Yet, a lawyer who acts dishonestly toward an employer raises serious questions of whether the lawyer has the necessary integrity to practice law. ABA Standard 5.11(a) states that disbarment is appropriate when a lawyer engaged in "serious criminal conduct, a necessary element of which includes . . . theft." ABA Standards for Imposing Lawyer Sanctions § 5.11 (1992).

Likewise, we have recognized "an obligation to protect the public and the courts from theft and deceit." *See Comm. on Prof'l Ethics & Conduct v. Shifley*, 390 N.W.2d 133, 135 (Iowa 1986); *see also Schatz*, 595 N.W.2d at 796.

> This obligation is no less important when the theft and deceit does not directly involve client funds. The same lack of trust is implicated, whether the funds are those of a client or another lawyer. Likewise, the need to maintain the reputation of the bar as a whole is the same, as is the need to deter other lawyers from engaging in similar conduct. Trust is not reserved for clients, but lies at the very heart of the profession.

*Schatz*, 595 N.W.2d at 796.

In this light, we think the time has come to ratchet up the disciplinary sanctions for nonclient theft. That said, this case may not be the appropriate case to do so. In particular, given our caselaw, Den Beste was not on notice that he faced a possible revocation when he entered into the stipulation in this case. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cepican*, 861 N.W.2d 841, 845 (Iowa 2015) (finding the attorney did not waive his right to contest a complaint of theft-based misconduct by failing to respond because he did not receive adequate notice of the allegation of theft). Thus, we rely on our precedent and impose a sanction in this case consistent with our prior cases. At the same time, we use this case as a vehicle to put the bar on notice that an attorney who steals from a law firm without a colorable claim may well incur stiffer disciplinary sanctions than have been imposed in our past cases.

**VI. Disposition.**

Upon full consideration of this matter, we order that the license of Curtis W. Den Beste to practice law in Iowa be suspended indefinitely with no possibility of reinstatement for a period not less than four months, effective with the filing of this opinion. This suspension applies to all facets of the practice of law. Iowa Ct. R. 34.23(3). Den Beste must comply with Iowa Court Rule 34.24, including timely notifying his clients of his suspension. Upon application for reinstatement, Den Beste must establish conformity with the requirements of Iowa Court Rule 34.25. Costs are assessed to respondent pursuant to Iowa Court Rule 36.24.

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who concurs in part and dissents in part.

#19–0630, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Den Beste*

**WIGGINS, Justice (concurring in part and dissenting in part).**

I agree with the majority that Curtis Den Beste's conduct violated the Iowa Rules of Professional Conduct. However, I disagree on the appropriate sanction.

On multiple occasions, Den Beste knowingly embezzled money from his law firm and then attempted to conceal what he had done. He had no colorable claim to nor was there any fee dispute regarding that money. "[I]t is almost axiomatic that the licenses of lawyers who convert funds entrusted to them should be revoked." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin*, 679 N.W.2d 641, 644 (Iowa 2004). Accordingly, I would revoke Den Beste's license to practice law.

In its complaint filed against Den Beste, the Board gave him the following notices under Iowa Court Rule 36.8:

> 1. If the Supreme Court finds that Respondent's violation of any of the aforementioned disciplinary rules cited in this Petition amounts to conversion, the Court could revoke Respondent's law license.

> 2. If the evidence establishes that funds are missing from Respondent's client trust account, the burden shifts to Respondent to come forward with evidence to establish a colorable future claim to those funds to avoid revocation of his law license.

*See* Iowa Ct. R. 36.8(1)–(2). In spite of these notices, Den Beste entered into a joint factual stipulation, which the commission accepted. That stipulation of facts is binding on us and the parties. *Id.* r. 36.16(2); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010).

The stipulation provides that Den Beste and his firm had an agreement that required Den Beste to deposit all fees he collected into either a trust account or the law firm's general account. Then he would

be paid 50% of the fees earned as a result of his work, and the other 50% would be retained by the law firm.

On several occasions throughout his ten-year tenure with the firm, clients delivered cash fee payments to Den Beste personally. Den Beste kept those cash fee payments for himself and did not deposit the funds as required by his agreement with the firm.

Den Beste instructed the firm's account manager to "write off" several client accounts that he deemed "uncollectable" even though the clients had paid Den Beste in cash. In an effort to collect some of the money owed by those uncollectable accounts, the account manager contacted some of those clients to ask about their nonpayment. Several of those clients responded that they had paid Den Beste directly.

The parties stipulated that Den Beste failed to deposit over $18,000 worth of cash payments, which resulted in a loss of approximately $9200 to Den Beste's firm. At no point did Den Beste assert—nor could he assert—a colorable claim to that $9200. At no point did Den Beste assert—nor could he assert—that the $9200 was part of a fee dispute either between a client and the firm or between Den Beste and the firm. Indeed, when confronted by his employer, Den Beste admitted "that he had wrongly kept the entirety of various clients' fee payments for himself, rather than depositing them with [the] firm and being compensated for 50% of said fee according to his employment agreement." This admission by Den Beste clearly establishes this was not a fee dispute between him and his firm, but rather, that he knowingly took money that clients owed the firm and converted it for his own use.

Although he was not criminally charged, Den Beste stipulated that his embezzlement violated Iowa Code section 714.1(2). *See State v. Sylvester,* 516 N.W.2d 845, 848–49 (Iowa 1994) (en banc) (per curiam)

(noting embezzlement violates section 714.1(2)). Likely, his conduct could also be a violation of section 714.1(1). Section 714.1 provides in pertinent part,

> A person commits theft when the person does any of the following:
>
> 1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.
>
> 2. Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

Iowa Code § 714.1(1)–(2) (2019).[1] At a minimum, Den Beste's conduct qualifies as second-degree theft, a class "D" felony. *See id.* § 714.2(2) (providing theft of property exceeding $1000 but not exceeding $10,000 in value is second-degree theft).

When an attorney steals funds entrusted to them, we have repeatedly revoked the attorney's license to practice law. *E.g.*, *Irwin*, 679 N.W.2d at 644; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz*, 595 N.W.2d 794, 796 (Iowa 1999); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester*, 548 N.W.2d 144, 147 (Iowa 1996); *Comm. on Prof'l Ethics & Conduct v. Piazza*, 405 N.W.2d 820, 824 (Iowa 1987). This case should be no different.

Theft of funds involves dishonesty, and dishonest attorneys have no place in our profession. *See Irwin*, 679 N.W.2d at 644; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Henrichsen*, 825 N.W.2d 525, 528

[1]Section 714.1(1)–(2) has not changed since Den Beste began working at the firm in 2007.

(Iowa 2013) ("We have [revoked the licenses of attorneys who stole from their law firms] on the belief that honesty is paramount in the legal profession."); *Comm. on Prof'l Ethics & Conduct v. Hanson*, 244 N.W.2d 822, 824 (Iowa 1976) (en banc) ("We do not think a lawyer who[, among other things,] . . . converted partnership funds possesses the qualities of good character essential in a member of the Iowa bar."). We have an obligation to protect the public from theft and deceit. *Schatz*, 595 N.W.2d at 796. "This obligation is no less important when the theft and deceit does not directly involve client funds. The same lack of trust is implicated, whether the funds are those of a client or another lawyer" or a third party. *Id.*; *see Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 650, 655 (Iowa 2002) (revoking license when attorney, who was the treasurer of the Iowa Intellectual Property Law Association, withdrew money from the association's account for his own use); *Piazza*, 405 N.W.2d at 824 ("Respondent Piazza has violated the trust we reposed in him by[, *inter alia*,] misappropriating funds of his clients and his law partners . . . .").

Moreover, attorneys who misappropriate funds from their law firms breach their fiduciary duties either as employees of the firms, *see* Restatement (Third) of Agency § 8.05(1), at 314 (Am. Law Inst. 2006) ("An agent has a duty . . . not to use property of the principal for the agent's own purposes or those of a third party . . . ."); Restatement of Employment Law § 8.01(b)(3), at 395 (Am. Law Inst. 2015) ("Employees breach their duty of loyalty to the employer by . . . misappropriating the employer's property, whether tangible or intangible, or otherwise engaging in self-dealing through the use of the employee's position with the employer."), as partners or members if the firm is a partnership or limited liability company, *see* Iowa Code § 486A.404(1)–(4) (defining partners' duties of

loyalty and care and obligation of good faith and fair dealing to the partnership and other partners); *id.* § 489.409(1)–(4) (providing members' duties of care, loyalty, good faith, and fair dealing in a member-managed company); 5 Matthew G. Doré, *Iowa Practice Series™: Business Organizations* §§ 6:9, 6:10, 6:11, 13:31, at 121, 122, 123, 125–26, 396–403 (2018–2019 ed.) [hereinafter Doré]; *see also Comm. on Prof'l Ethics & Conduct v. McClintock,* 442 N.W.2d 607, 607–08 (Iowa 1989) ("Most law partnerships are founded upon a total trust and confidence among the partners.   A breach of this exceedingly close relationship merits disciplinary action."), or as directors or majority shareholders if the firm is incorporated, *see* Iowa Code § 490.830(1) (imposing duties of good faith and reasonable actions on each director of a corporation); *id.* § 490.831(1)(*b*)(5) (indicating a director cannot receive a financial benefit from the corporation that the director was not entitled to); 6 Doré § 28:10, at 125–27 (collecting cases holding a corporation director's misappropriation of corporate property breaches the director's duty of loyalty); *see also id.* § 31:10, at 263–67, 269 (suggesting majority shareholders in closely held corporations have duties of loyalty and care that are analogous to those of corporate directors).

Plain and simple, Den Beste admitted to stealing someone else's money several times.  The state would almost surely charge a nonlawyer who embezzled over $9000 from his or her employer with theft, but this attorney, who stipulated that he embezzled over $9000 from his employer, avoids criminal punishment and this court gives him merely an insignificant disciplinary sanction.  *See, e.g., Iowa Falls Woman Pleads Guilty to Embezzlement,* Des Moines Reg. (Apr. 2, 2015), https://www.desmoinesregister.com/story/news/crime-and-courts/2015/04/02/iowa-falls-teresa-kobriger-bank-embezzlement/70817348/

[https://perma.cc/Z23B-KCL9] (reporting a woman pled guilty to federal embezzlement charges after she took cash from the teller drawers and vault of the bank where she worked and fraudulently altered bank records to cover up her theft); *Storm Lake Librarian, Art Teacher Charged with Stealing $2,130 from Catholic School Fundraisers*, Sioux City J. (Aug. 9, 2019), https://siouxcityjournal.com/news/local/crime-and-courts/storm-lake-librarian-art-teacher-charged-with-stealing-from-catholic/article_9e8c5464-2026-5e66-a449-c9d7f3c81d70.html [https://perma.cc/P3D8-RHKW] (reporting a school librarian and teacher was charged with felony theft after stealing over $2000 in proceeds from two school fundraising events); *see also* Daniel P. Finney & Anna Spoerre, *Police: Des Moines Accountant Stole More Than $200,000 from Open Bible Churches over a Decade*, Des Moines Reg. (May 13, 2019), https://www.desmoinesregister.com/story/news/crime-and-courts/2019/05/13/police-des-moines-woman-stole-thousands-open-bible-churches/1195935001/ [https://perma.cc/Z59K-Y9Z7] (reporting a woman, who wrote unauthorized checks to herself while an accountant at the Churches' denominational headquarters, was charged with first- and second-degree theft); Danielle Gehr, *Woman Accused of Pocketing Charity Funds Raised to Help with LeClaire Family's Medical Expenses*, Des Moines Reg. (Aug. 14, 2019), https://www.desmoinesregister.com/story/news/crime-and-courts/2019/08/14/woman-steals-charity-fundraiser-help-leclaire-familys-medical-expenses/2013658001/ [https://perma.cc/32QL-645C] (reporting a woman, who organized the vendor fair portion of a fundraiser, was charged with third-degree theft after she kept $972 in vendor funds); Charly Haley, *Former D.M. Cop Accused of Embezzlement*, Des Moines Reg. (Oct. 8, 2015), https://www.desmoinesregister.com/story/news/crime-and-courts/2015/10/08/former-des-moines-police-officer-accused-

stealing-more-than-20000/73617046/ [https://perma.cc/KTQ3-VF7K] (reporting a former Des Moines police officer was charged with theft for embezzling over $20,000 from the police gym while serving as the gym's treasurer); Anna Spoerre, *Des Moines Man Pleads Guilty to Stealing Thousands from United Way, Iowa Union over Nearly a Decade*, Des Moines Reg. (Apr. 16, 2019), https://www.desmoinesregister.com /story/news/crime-and-courts/2019/04/16/international-association-heat-frost-insulators-allied-workers-united-way-central-iowa-embezzlement /3482321002/ [https://perma.cc/472X-GPFV] (reporting a man, who, as the business manager for his local union, received over $35,000 worth of checks from the United Way that were to fund training for the union and cashed those checks for personal use, pled guilty to federal embezzlement charges); cf. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 401–02, 405 (Iowa 2016) (revoking license after attorney violated rule 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by agreeing to create a management company with two others (wherein the company would receive $27,500 per month, he would make $12,000 per month as CEO, and the remaining amounts would be evenly split between the two others) but instead creating the management company with himself and his wife as the sole members and misappropriating all of the revenue, disbursing little or nothing to the two others); Austin Cannon, *Des Moines Man Accused of Using Money Meant for Disabled Relative to Buy a New Car*, Des Moines Reg. (July 9, 2019), https://www.desmoinesregister.com/story/news/2019/07/09/des-moines-man-accused-spending-money-meant-disabled-relative-new-car/1683417001/ [https://perma.cc/JD58-ME8H] (reporting a man was charged with first-degree theft for taking over $40,000 in Social Security funds from a disabled relative's account and not using it for the relative's

benefit even though he had been told that he could not use the money for himself); Ian Richardson, *Police: Des Moines Woman Stole Nearly $5,600 from Woman with Dementia*, Des Moines Reg. (July 22, 2019), https://www.desmoinesregister.com/story/news/crime-and-courts/2019/07/22/des-moines-crime-woman-stole-nearly-5000-dollars-woman-dementia/1794616001/ [https://perma.cc/F4U4-KCZW] (reporting a woman, who had power of attorney for another woman with dementia, was charged with second-degree theft after taking money from the victim's account and not using it for the victim); Lee Rood, *Deadbeat Contractors Are Iowa's No. 1 Fraud Complaint. Legislators Are Being Asked to Make Them Pay*, Des Moines Reg. (Oct. 15, 2018), https://www.desmoinesregister.com/story/news/investigations/readers-watchdog/2018/10/15/iowa-legislators-fraud-complaint-bad-contractors-des-moines-construction-remodeling-home-building/1592835002/ [https://perma.cc/5NHR-KAQ6] (discussing a Des Moines general contractor who repeatedly took customers' money and then walked away from jobs before completion and noting difficulties with holding such contractors accountable because the Iowa appellate courts have held that customers give construction down payments outright and the payments are not held in trust); Lee Rood, *Des Moines Contractor Accused of Ripping Off Several Customers Across the Metro Convicted of Theft*, Des Moines Reg. (July 18, 2019), https://www.desmoinesregister .com/story/news/2019/07/18/des-moides-moines-contractor-convicted-of-theftnes-contractor-convicted-theft/1767712001/ [https://perma.cc/E9S3-HLSH] (reporting the contractor in the previous article was convicted of felony theft for writing bad checks to buy materials but not reporting that the contractor is being held accountable for taking money for jobs but then walking away from those jobs).

The stipulation in this case is devoid of any mention as to why the state did not charge Den Beste with a crime. I have to ask myself, was Den Beste not charged with a crime because he was a lawyer? I wonder if he were convicted of a felony, would the court revoke his license. *See* Iowa Code § 602.10122(1) ("The following are sufficient causes for revocation or suspension: 1. When the attorney has been convicted of a felony."). It is not our job to protect lawyers by handing down lenient sanctions. Our job is to protect the public from lawyers who steal.

I have consistently taken the position that an attorney who steals money should be disbarred. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 183 (Iowa 2019) (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 591 (Iowa 2019) (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Springer*, 904 N.W.2d 589, 598 (Iowa 2017) (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 33–34 (Iowa 2015) (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 360–64 (Iowa 2013) (Wiggins, J., dissenting); *Henrichsen*, 825 N.W.2d at 530–31 (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 530–34 (Iowa 2012) (Wiggins, J., dissenting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 513 (Iowa 2012) (Wiggins, J., dissenting).

I have also taken the position that the court should apply the objective criteria of the ABA's *Standards for Imposing Lawyer Sanctions* (1992). *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Pederson*, 887 N.W.2d 387, 395 (Iowa 2016) (Wiggins, J., concurring in part and dissenting in part); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Arzberger*, 887 N.W.2d 353, 369 (Iowa 2016) (Wiggins, J., concurring in part and dissenting in part); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887

N.W.2d 131, 150 (Iowa 2016) (Wiggins, J., concurring in part and dissenting in part). It is nice to see that some members of the court are finally moving in this direction.

The Board gave Den Beste notice we could revoke his license if he converted funds. In spite of that notice, Den Beste stipulated that he committed theft. We have an obligation to protect the public from Den Beste's egregiously unethical conduct. The public deserves and demands more than apathy from us. Even the Washington Supreme Court case cited by the majority to establish Den Beste committed a theft revoked that attorney's license. *See In re Disciplinary Proceeding Against Placide*, 414 P.3d 1124, 1126–27, 1134–36, 1143 (Wash. 2018) (concluding revocation is the proper sanction for an attorney who committed theft based on conduct similar to the conduct in this case under a statute similar to Iowa's theft statute). *Compare* Iowa Code § 714.1(1)–(2) (defining theft), *with* Wash. Rev. Code Ann. § 9A.56.020(1) (West, Westlaw through all currently effective legislation from the 2019 Reg. Sess.) (defining theft). Thus, I would not hesitate to revoke Den Beste's license to practice law.

Revocation may not be forever. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 884 N.W.2d 761, 772 (Iowa 2016) (per curiam) (provisionally granting an attorney's application for reinstatement of his license to practice law in Iowa after a revocation). A revocation would allow him the opportunity to reapply for his license after at least five years under our recently amended Iowa Court Rule 34.25(7)–(9). By revoking Den Beste's license, we would provide the proper protection to the public.